# THE CHICAGO BUILDING SOCIETY

*v.*

# HENRY A. CROWELL.

1. CORPORATION, PRIVATE—*power to contract for insurance.* Under the act of 1869, authorizing the formation of incorporated companies, for the accumulation of a fund with which to purchase real estate in large tracts, paying off incumbrances thereon, and the sub-division of the same into lots suitable for homesteads, and the distribution of such lots among the shareholders, or to aid the shareholders in acquiring real estate, making improvements thereon and removing incumbrances therefrom, a company was incorporated, who made a loan, taking a deed of trust to secure its payment, and providing therein that the borrower should insure the buildings. The secretary of the company insured for the first year, charging

the premium to the borrower, and insisted upon the right to insure for the next year, to which the borrower at first objected, but finally assented upon the secretary agreeing to make the insurance. The latter failed to do so, the buildings were destroyed by fire, when the borrower sued the company for a failure to insure. The company objected that it had no authority to make such a contract: *Held*, that, as the company was authorized to make the loan and provide for the security of the same, it followed as an incident that it had the right to provide for insuring property taken in security, and that an action would lie for a breach of the agreement to insure.

2. While it is true that public policy requires that corporations should be confined strictly within the limits of their charters, and not be allowed to exercise powers beyond those expressly conferred, that would be hurtful to the public interest, yet where they have exercised powers incidental to those conferred, and in furtherance of the general objects of the corporation, although the subject of the contract may not be within any express right conferred, they will be *estopped* from denying that they had authority to make such contracts.

3. SAME—*power of secretary presumed from circumstances.* Where it appeared that the secretary of an incorporated company had, for some time prior, been making similar contracts in behalf of the company, he having no personal interest in making the same, and the company received the benefits accruing from such contracts without objection: *Held*, that it would be inferred that he acted with the knowledge of the directors, and that he was authorized to make such contracts.

4. MEASURE OF DAMAGES—*on agreement to procure an insurance.* Where a defendant agreed with the plaintiff to have the buildings of the latter insured in some good company, and had made arrangements with a company for such purpose, but before the same was effected the buildings were burned, and it appeared that the company, in consequence of the great Chicago fire, had become insolvent, but was good when the arrangement was made: *Held*, that the sum at which insurance was agreed to be made was not the proper measure of damages, but only such dividend as the insurance company would be able to pay in case the insurance had been perfected before the loss.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

In this case Henry A. Crowell procured a loan of money from the Chicago Building Society, for which he gave his note secured by deed of trust upon certain real estate, and covenanted in such deed to keep the buildings thereon insured in

such company or companies as the Building Society should designate. By a subsequent arrangement the society, through its secretary and managing agent, agreed with Crowell to procure such insurance for him in the sum of $1000, but before the same was effected the buildings were destroyed by fire. Crowell thereupon brought suit against the society for a breach of the contract to procure the insurance, and a trial was had which resulted in a verdict and judgment in favor of the plaintiff for $1000, from which judgment the defendant appealed to this court.

Mr. JAMES B. BRADWELL, for the appellant.

Messrs. NISSEN & BARNUM, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The principal points relied on to reverse this judgment are—

*First*—That the contract made by the building society to procure the insurance upon the property of the appellee was *ultra vires*, not incidental to the purposes of the corporation, nor for its benefit, of which the appellee, being a member of the company, was bound to take notice.

*Second*—In any event, the damages found by the jury are excessive.

The jury having found the facts, we must regard the contract as having been made as alleged in the declaration. There is, however, no serious dispute in the evidence as to the nature and terms of the contract between the parties.

Appellant is a building society incorporated under the act of 1869, entitled "An act to authorize the formation of corporations to provide the members thereof with homesteads or lots of land suitable for homesteads."

Section one provides "that any number of persons not less than three may associate and form themselves into an incorporated company, for the purpose of accumulating a fund for

the purchase of real estate in large tracts, paying off incumbrances thereon, and the sub-division thereof into lots and parcels suitable for homesteads, and the distribution of such lots or parcels among the shareholders or to aid the shareholders in acquiring real estate, making improvements thereon and removing incumbrances therefrom."

The objects of said corporation are stated in article two of its articles of association, which is as follows:

" Article 2.   Its object shall be to facilitate the increase of capital by accumulation, to assist members thereof in the acquisition of real estate, in the erection of buildings, and in the removal of incumbrances upon property already held by them; and for these purposes, to enable them to receive the amount of their shares in advance upon furnishing good mortgage security."

Appellee applied to the company and obtained a loan on the first of March, 1870, of $700, payable in monthly instalments of $21.33, and secured the same by deed of trust to William L. Greenlee, president of the association, in which appellee covenanted that he would keep all buildings that might be on said premises, during the continuance of said indebtedness, insured in such company or companies as the holder or holders of said note might direct, for such sum or sums as such companies would insure for, not to exceed the amount of such indebtedness, except at the option of appellee.

In accordance with the agreement of appellee to keep the mortgaged property insured for the benefit of appellant, on the sixth day of October, 1870, Brooke, the secretary, and, to some extent, the managing agent of the company, obtained a policy of insurance for $1000, in the State Insurance Company, running to appellee, for one year, and advanced the premium. The secretary furnished appellee with a pass book, in which he charged him with the $700 loaned, and also the $5 advanced for insurance, which amount advanced for insurance was subsequently repaid by appellee, and credited to him, together

with other payments, on the pass book.    The secretary of appellant retained the policy in his possession.

Just before the expiration of the policy in the State Insurance Company, appellee went to the office of the building society and told the secretary that he would like to attend to his own business; that he had made application for insurance to an agent, as it was about to expire; that he thought the company had sufficient security for all the money he got of them, and that he would like to attend to his own insurance ; and the secretary, in reply, told him that the company would rather attend to the insurance themselves, and that they could get insurance at better rates than appellee could. It was finally agreed that the secretary should obtain a policy upon the property in the sum of $1000, as he had done the previous year.    This was just before the fire of the 9th and 10th of October, 1871, in which the property was totally destroyed.    The secretary had previously made application to the Merchants' Insurance Company for a policy for the agreed amount, but no insurance had really been effected previous to the fire, and so the buildings upon the property were entirely lost to appellee.

One ground upon which the liability of the company is resisted is, that the agreement to procure insurance for appellee was not incidental to the purposes of the corporation, nor for its benefit.

The company was expressly authorized and empowered by the act of the legislature to make loans and provide for the security of the same on real estate, as well upon improved as upon unimproved property.    As an incident to security upon improved real estate, no reason is perceived why it may not be regarded as within the powers granted, that the corporation should have the right to contract for insurance on the improvements on the property, to make more available and certain their security, and such a contract would be for the benefit of the company.

It was so expressly provided in the deed of trust, that appellee should keep the property insured in such company, and for such amount, as appellant should designate, not exceeding the amount of the indebtedness except at the option of appellee. It was in pursuance of this provision in his contract that appellee procured, or permitted the secretary to obtain, the insurance for the first year, and contracted that he should procure it for the succeeding year.

It was for the better securing of the loan made to appellee that the insurance was to be procured, and in this view it can hardly be said that it was not incidental to the legitimate purposes of the corporation, nor that it was not for its benefit. It was germane to the business that the corporation was transacting, and, in case of loss, would enure to its advantage.

The liability of the company, however, is resisted mainly on the ground that there is no authority in the act of the legislature authorizing the incorporation of the company, or in the articles of association, for making the contract to procure insurance for appellee, and because it is beyond the powers expressly conferred, it is insisted that such contract is void and can not be enforced.

It is said that there is nothing in the act of the legislature authorizing such incorporations, or in the articles of association, that would authorize appellant to engage in the insurance business. It may be conceded that appellant has no such power, but that is not this case. Appellant did not undertake to insure the property of appellee, but only to obtain insurance for him in some responsible company, as it had previously done. This is a very different undertaking, and rests wholly on different principles.

The true construction of the contract declared on is that, by the terms of the original agreement, appellee was bound to keep the property insured in such company as appellant should select, and because it was supposed to be some advantage to the company to attend to the insurance themselves,

that right was conceded to them on their agreement to procure it.

For what reason the company desired to attend to the insurance is not very clear, nor is it material. It is sufficient that they desired to have it under their control, and it may be presumed to have been to their interest to have it, or else they would not have sought the privilege, when appellee was anxious and desirous to attend to it himself.

No reason is perceived why the company could not have obtained the control of the insurance which was for the security of the loan to appellee, and to contract that it would procure it for him in a company that they would select; and to hold that appellant would not be liable for the breach of such contract simply because it is beyond the express powers conferred, would be to carry the doctrine of *ultra vires* to an unprecedented extent. This doctrine must have a reasonable construction.

Public policy requires that corporations should be confined strictly within the limits of their charters, and should not be allowed to exercise powers beyond those expressly conferred that would be hurtful to the public interest.

But where corporations have exercised powers incidental to those conferred, and in furtherance of the general objects of the corporation, although the subject of the contract may not be within any express right conferred, they will be estopped from denying that they had authority to make such contracts. Good faith to third parties who deal with such corporations, and who may have no accurate knowledge of the extent of their powers under their charters, requires the adoption of this salutary rule. The rule has its foundation in the plainest principles of natural justice.

When such corporations have received the benefit of a contract, if there is nothing in it that is contrary to public policy, there can be no just reason why they should not be required to perform it.

Common honesty requires that when a corporation has conducted, through a series of years, a business incidental to and advantageous to the objects and purposes for which the corporation was created, although not within the express terms of their charter, they should be estopped to deny that they had rightful authority to make contracts in that regard, and should be held liable for the damages that may accrue in the breach. The liability for the damages arising on the breach results as a corollary from the right to contract.

In the case at bar, the secretary of the company had been accustomed to make such contracts, and from the manner in which the business was transacted, we must infer that it was with the knowledge of the directors. Whatever advantage there was in such contracts, enured to the profit of the company. The secretary certainly did not contract for his own benefit, but for that of the company. It is not perceived how he could possibly have had any personal interest in the matter.

The contract may, therefore, be considered as having been made on behalf of the company. The company was to be benefited, if any one, and not the secretary, and appellant shall not now say that the officer had no authority to make the contract on its behalf.

If appellant did not intend to be bound by the acts of the secretary, the directors ought to have forbidden him to exercise such power; and after injury has occurred to a third party, it is too late to insist that he had no authority to make such contracts on behalf of the company. It would be most inequitable to allow appellant to avail of such contracts so made by the secretary, so long as the same are to its advantage, but to repudiate the same as having been made without authority, when damages are claimed for the breach.

The authority of the secretary in the premises may be inferred from the fact that the company knew he was making such contract on its behalf, and that it availed of whatever benefit arose therefrom, whether it was much or little.

The views here expressed are believed to be in harmony with the current of authorities, and are fully sustained, in principle, by the following cases: *Bradley* v. *Ballard,* 55 Ill. 417; *Buffit* v. *The Boston and Troy R. R. Co.* 36 Barb. 420; *Ably* v. *Billipps et al.* 35 Miss. 618; *Parrish* v. *Wheeler,* 22 N. Y. 494; *Noyes* v. *B. and R. R. R. Co.* 27 Vt. 111; *Bissell* v. *M. S. and N. I. R. R. Co.* 22 N. Y. 258; *Perkins* v. *The Portland, Saco and Portsmouth R. R.* 47 Me. 590; *Barry* v. *The Merchants' Exchange Co.* 1 Sandf. Chy. 289; *Goodwin* v. *The Union Screw Co.* 34 N. H. 378.

In regard to the second objection, we think it is well taken. The jury, under the instructions of the court, found a verdict for the full amount of the policy agreed to be procured, less a reasonable premium. This was error.

It was the contract between the parties that appellant should have the right to select the company in which the insurance should be effected. In the exercise of this right, the secretary of appellant did apply to the Merchants' Insurance Company for the insurance agreed upon, and was told by the agent that he should have the insurance upon some terms to be thereafter agreed upon. This must be regarded as a selection of the company. It is not even insisted that the selection was an improper one. So far as the evidence discloses, the Merchants' Insurance Company, at that date, was regarded as entirely solvent, and the selection can not be said to have been an improvident one. If appellant had effected the insurance in that company it would have been a compliance with its contract with appellee. This, appellant did not do, and it must be held liable to the extent that a policy in that company would have afforded appellee indemnity, but no farther.

There can be no reasonable doubt that but for the disastrous fire that occurred about the date of the transaction between the parties the insurance would have been effected in that company. It appears from the evidence that, in consequence of the losses sustained by reason of that memorable fire, the Merchants' Insurance Company became insolvent, and has

since ceased to do business. Whatever dividend the company may be able to pay, will be the criterion for ascertaining appellee's damages.

For the reason that the damages found are excessive, the judgment is reversed and the cause remanded.

*Judgment reversed.*