(No. 45922.—

WALTER F. KERRIGAN, Appellee, v. UNITY SAVINGS ASSOCIATION *et al.,* Appellants.

*Opinion filed September 17, 1974.*

UNDERWOOD, C.J., and WARD and GOLDENHERSH, JJ., took no part.

David P. List and Jerrold E. Fink, of Sidley & Austin, of Chicago, for appellants.

Frank J. Mackey, Jr. and Sidney Z. Karasik, of Chicago, for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, Walter F. Kerrigan, a permanent reserve shareholder of Unity Savings Association, a savings and loan association chartered under the Illinois Savings and Loan Act (Ill. Rev. Stat. 1973, ch. 32, pars. 701 through

944), brought this derivative action in the circuit court of Cook County on behalf of himself, Unity, and all Unity's other members against five directors of Unity and against Plaza Insurance Agency, Inc. The complaint sought an accounting of profits and injunctive relief. After the complaint and the answer had been filed, each party moved for summary judgment. The court granted the defendants' motion, and dismissed the action. On the plaintiff's appeal the Appellate Court for the First District reversed and remanded. (11 Ill. App. 3d 766.) We granted defendants' petition for leave to appeal.

The complaint alleged that Unity was the successor to a savings and loan association formed prior to 1959, and that Plaza had been organized in 1962 by "some or all" of the five individual defendants. The five include three directors who are also officers of Unity: Saul Z. Bass, Unity's president; Mitchell H. Bass, a vice president; and Howard Bass, the secretary and also a vice president. These three defendants also hold positions with Plaza. Saul Z. Bass is Plasa's president; Mitchell H. Bass is its registered agent, and Howard Bass is its secretary. The complaint does not specify what positions, if any, are held with either Unity or Plaza by the two remaining individual defendants, Louis Speer and Myron Voss. It is admitted by the answer, however, that the individual defendants control Unity's business affairs.

The complaint further alleges that Plaza has its offices in the building owned and occupied by Unity under a lease from the latter, and that Unity "refers" its borrowers to Plaza to obtain fire and homeowner's insurance and other forms of insurance coverage in connection with mortgage loans made by Unity. These allegations were all admitted by the answer. In addition, in response to interrogatories from the plaintiff, Plaza admitted that it had advertised itself as an "agent" of Unity.

The complaint contained a further allegation that Plaza was empowered under its articles of incorporation to

place loans on real estate on terms competitive with loans which Unity was authorized to make. The defendants admitted that allegation, but stated in their answer that Plaza had not done so. Defendants also stated in their answer, and in an affidavit supporting their motion for summary judgment, that the lease of office space to Plaza was at a rental no lower than that prevailing for comparable property.

The theory of the complaint was that the individual defendants, by creating Plaza, had assumed a role which would produce a conflict of interest with their positions as directors and officers of Unity. Plaintiff also made the specific charge that by selling insurance to borrowers from Unity the defendants had appropriated for their own benefit a business opportunity which properly belonged to Unity. The relief sought included an accounting of profits, the imposition of a constructive trust on all shares of Plaza stock, and an injunction restraining defendants from continuing the practices complained of. From the answers to plaintiff's interrogatories by Plaza it appears that over the period from 1962 through 1969 Plaza earned approximately $428,000 in insurance commissions. Although one of plaintiff's interrogatories requested information on the amount of Plaza's commissions on insurance placed on persons referred to Plaza by Unity, no figures with respect to that item appear in the record.

The only affirmative defenses raised in the answer with respect to the admitted allegations of the complaint, and the only grounds relied on in defendants' motion for summary judgment were that Unity lacked the power under the Savings and Loan Act to write insurance, and that Unity was in any event forbidden to do so by provisions of the Illinois Insurance Code of 1937 (Ill. Rev. Stat. 1973, ch. 73, par. 613 *et seq.*). The appellate court determined that Unity did have the legal power to engage in the insurance business, either directly or through a subsidiary, and reversed the decision of the circuit court.

Because the appellate court felt that the asserted liability of the defendants involved questions of fact which could not be determined without a trial, it remanded the case for a determination of those questions.

Each party has argued the cause here, as they did in the appellate court, on the theory that defendants cannot be held liable if Unity lacked the legal power to perform the business activities engaged in by Plaza, since in that event there would have been no business opportunity for defendants to appropriate. We conclude, as did the appellate court, that at the time when Plaza was formed Unity did have the power to engage in the same activities performed by Plaza. We are of the opinion, however, that upon the facts alleged in the complaint and admitted by defendants the liability of the latter does not depend solely on whether in 1962 Unity had the power to engage in the insurance brokerage business.

We turn first to the question of Unity's powers under the Savings and Loan Act. While no power to act as an insurance broker is expressly conferred by the Act, section 1—8 thereof (Ill. Rev. Stat. 1961, ch. 32, par. 708) does provide: "An Association also shall have any power conferred on a corporation by the Business Corporation Act, and any power not prohibited by law which is reasonably incident to the accomplishment of the express powers conferred upon the Association by this Act." One of the powers expressly conferred by the Act is the power granted by section 5—1(b) (Ill. Rev. Stat. 1961, ch. 32, par. 791) to make loans to members on the security of real estate.

When such a loan is made on improved property it is in the obvious interest of the mortgagee that the improvement be covered by insurance in an adequate amount. Although the mortgagee, under Illinois law, acquires only a lien on the property (*Kling v. Ghilarducci* (1954), 3 Ill.2d 454, 460), its interest is an insurable one to the extent of the debt (*Trustees of Schools v. St. Paul Fire and Marine*

*Insurance Co.* (1921), 296 Ill. 99, 102), and the mortgagee may therefore procure the insurance itself. Alternatively, the mortgagee may require the mortgagor to obtain the insurance, and may, as an incident to the making of the loan, act as the broker for the borrower in placing the insurance.

The question of the authority of the mortgagee to act as broker was answered over 100 years ago in *Chicago Building Society v. Crowell* (1872), 65 Ill. 453. There a loan association, having obtained a covenant from a mortgagor to keep the buildings on the premises insured, agreed to obtain the policy for him. Before that objective had been realized, however, the buildings were destroyed in the Chicago fire, and the mortgagor brought suit against the association for breach of its agreement. By way of defense the association urged that its charter did not empower it to procure insurance, and that the agreement to do so was not incidental to the purpose for which the association had been formed. In rejecting that defense the court stated:

> "The company was expressly authorized and empowered by the act of the legislature to make loans and provide for the security of the same on real estate, as well upon improved as upon unimproved property. As an incident to security upon improved real estate, no reason is perceived why it may not be regarded as within the powers granted, that the corporation should have the right to contract for insurance on the improvements on the property, to make more available and certain their security, and such a contract would be for the benefit of the company." 65 Ill. at 457.

While there is language in the opinion relating to estoppel, the decision, in our opinion, established that it was within the power of a savings and loan association to act as a broker in the placement of insurance, because that activity

was reasonably incident to the making of the mortgage loan. A similar conclusion was reached in *Goodman v. Perpetual Building Association* (D.D.C. 1970), 320 F. Supp. 20. Our own conclusion is reinforced by the fact that section 506 of the Insurance Code (Ill. Rev. Stat. 1973, ch. 73, par. 1065.53) contains a specific prohibition against the licensing of certain classes of banks as insurance agents or brokers, but contains no parallel prohibition directed against savings and loan associations.

In view of our conclusion that Unity can engage, and in 1962 could have engaged, in the insurance brokerage business directly, we need not decide whether Unity, prior to changes in the Savings and Loan Act made in 1967, could have formed a subsidiary to conduct such a business. For the same reason we need not determine whether the individual defendants, assuming that Unity could not have engaged in the insurance brokerage business until 1967, were obligated at that time to terminate their connection with Plaza or to tender to Unity, in some manner, the opportunity to engage in the insurance business.

With the question of Unity's corporate powers disposed of adversely to defendants, we reach the question whether the individual defendants usurped a business opportunity open to Unity. On this issue we start with the basic proposition that a director of a corporation owes a fiduciary duty to it. That proposition, often endorsed by this court, was reaffirmed in *Shlensky v. South Parkway Building Corp.* (1960), 19 Ill.2d 268, a case involving leases to and purchases of property from other companies in which directors of the building corporation held an ownership interest or a directorship. It was charged by minority stockholders of the corporation, and this court found, that the challenged transactions were unfair to the corporation, that they amounted to a depletion of its assets and the siphoning off of its profits for the benefit of the other concerns. See 19 Ill.2d at 287, 291.

It may be conceded that if a corporation has been

informed by a director of a business opportunity, which it declines, the director may then be free to pursue the opportunity himself. That was the situation in *Diedrick v. Helm* (1944), 217 Minn. 483, 14 N.W.2d 913, in which the secretary of a savings and loan association was permitted to establish his own separate insurance agency after the association had considered and rejected the possibility of operating its own agency.

In the present case, however, no claim is made that Unity was informed of the possibility that it might enter into the insurance business or of the intention of the defendants to do so on their own if Unity did not. Defendants stress their belief that Unity could not have legally engaged in the business. But that belief, assuming that it was held in 1962, cannot operate as a substitute for defendants' duty to present the question to Unity for Unity's independent evaluation. Since the individual defendants, as directors, admittedly controlled Unity, the requisite disclosure and tender would necessarily have had to be made to Unity's shareholders.

For various legal, financial, or other reasons Unity might properly have concluded as a matter of business judgment that it did not want to become an insurance broker. But if the doctrine of business opportunity is to possess any vitality, the corporation or association must be given the opportunity to decide, upon full disclosure of the pertinent facts, whether it wishes to enter into a business that is reasonably incident to its present or prospective operations. If directors fail to make such a disclosure and to tender the opportunity, the prophylactic purpose of the rule imposing a fiduciary obligation requires that the directors be foreclosed from exploiting that opportunity on their own behalf. (See *Lutherland, Inc. v. Dahlen* (1947), 357 Pa. 143, 53 A.2d 143; *Durfee v. Durfee & Canning, Inc.* (1948), 323 Mass. 187, 80 N.E.2d 522.) In the latter case, with regard to the alleged financial inability of a corporation to make certain purchases, the

court quoted the following passage from *Irving Trust Co. v. Deutsch* (2d Cir. 1934), 73 F.2d 121, 124: "If the directors are uncertain whether the corporation can make the necessary outlays, they need not embark it upon the venture; if they do, they may not substitute themselves for the corporation any place along the line and divert possible benefits into their own pockets." (323 Mass. 187, 202, 80 N.E.2d 522, 530.) We consider that this reasoning is equally applicable to a claim that a corporation was precluded from following a course of action by legal, rather than financial, reasons. See Note, *Corporate Opportunity,* 74 Harv. L. Rev. 765 (1961).

The present case is not one in which the defendants did no more than capture an opportunity which came their way because of their positions with Unity, an opportunity which Unity had indeed created through its lending activities, although those factors alone would in our opinion be enough to fix liability upon defendants. (See *Guth v. Loft, Inc.* (1939), 23 Del. Ch. 255, 5 A.2d 503; *Rosenblum v. Judson Engineering Corp.* (1954), 99 N.H. 267, 109 A.2d 558.) Here it is admitted that the individual defendants caused Unity to "refer" its borrowers to Plaza, whose office was strategically located in the same building as that of Unity.

The pleadings do not reveal the terms in which these "referrals" were couched or the manner in which they were made, but it cannot be supposed that the arrangement between Unity and Plaza was not financially advantageous to the latter. Had it been otherwise the defendants would not have persevered in it. Whether the funneling of prospective customers to Plaza is regarded as an appropriation of an asset of Unity, denominated as good will, or whether it is regarded as an employment of Unity's facilities without compensation to it, the result is the same: The defendants were actively exploiting their position as directors of Unity for their personal benefit. See *Guth v. Loft, Inc.* (1939), 23 Del. Ch. 255, 5 A.2d

503; *Durfee v. Durfee & Canning, Inc.* (1948), 323 Mass. 187, 80 N.E.2d 522; Wadmond, *Conflicts of Business Interests,* 17 Bus. Lawyer 48 (1961); Wadmond, *Seizure of Corporate Opportunity,* 17 Bus. Lawyer 63 (1961).

The complaint also charged that in creating Plaza the individual defendants had placed themselves in a position where a conflict of interest would arise.

A potential conflict clearly exists, for under its articles of incorporation Plaza was authorized not only to engage in the insurance business but also to make loans on real estate, the same business in which Unity was engaged. The representation by defendants that Plaza had not hitherto undertaken to exercise that power does not insure that it might not do so in the future. But even as to Plaza's existing operations one can discern areas in which its interests and those of Unity might diverge, among them the selection of the insurance carrier, the reliability of Plaza's performance as to the periodic renewal of insurance, and the size of the commissions charged by Plaza.

Our decisions have long applied the overriding rule that directors are not to be placed in a position where their own individual interests might interfere with the performance of their duties to their corporation. As early as *Gilman, Clinton and Springfield R.R. Co. v. Kelly* (1875), 77 Ill. 426, where directors of a railroad company had become stockholders in a company with which the railroad had a construction contract, we observed that the rule "stands on the obligation which a party owes to himself and his principal, that forbids him to assume a position which would ordinarily excite a conflict between his individual interest and a faithful discharge of his fiduciary duties." (77 Ill. 426, 434.) The same thought was expressed in *Farwell v. Pyle-National Electric Headlight Co.* (1919), 289 Ill. 157, in which a director had purchased patent rights under which his corporation was the exclusive licensee. (See 289 Ill. at 166-167.) In our view the fiduciary obligations of a director cannot be diluted to the

point that they include only the situation in which the director is a seller to or a purchaser from the corporation, or holds an interest in specific property, or under a contract, adverse to the corporation.

The defendants have renewed in this court their contention that Unity would have been precluded from entering into the insurance brokerage business by section 508 of the Illinois Insurance Code of 1937 (Ill. Rev. Stat. 1973, ch. 73, par. 1065.55). That section specifies that the Director of the Department of Insurance shall not issue a broker's or an agent's license unless the applicant is to be "actively engaged" in the insurance business. The quoted term is defined to mean that the applicant "intends" to write insurance on the property or risks of others in an amount such that the total volume of premiums from that source will be at least twice that obtained from insurance on the property or risks of the applicant itself, or the property or risks of its officers or directors, if the applicant is an association or corporation. The argument made is that Unity, as the mortgagee, would be insuring its own risk, as well as the risks of its borrowers, who are thereby its members.

From what we have previously said in this opinion on the question of Unity's powers under the Savings and Loan Act, it is clear that this contention of defendants does not raise a valid defense. That Unity would have been denied a license under section 508 cannot be retroactively assumed, and the record does not show that defendants ever caused Unity to apply for a license.

In reversing the decision of the circuit court the appellate court directed that the cause be remanded and restored to the docket for further proceedings, which the appellate court saw as including a determination whether Unity could "in fact" engage in the business of insurance brokerage. While a remand is necessary in order for the trial court to ascertain the amounts to which the plaintiff is entitled and to determine what other relief should be

granted, in the view that we take of this case, the question of defendants' liability is established on the basis of the pleadings and no trial is required. The judgment of the appellate court is accordingly reversed in this respect, and the cause is remanded to the circuit court of Cook County for further proceedings in accordance with the views expressed in this opinion.

*Affirmed in part, reversed in part, and remanded.*

UNDERWOOD, C.J., and WARD and GOLDEN-HERSH, JJ., took no part in the consideration or decision of this case.