Gerald P. GRACE, as Trustee in Bankruptcy of S. I. Greene Company, Bankrupt, Plaintiff-Appellee,

v.

E. J. KOZIN COMPANY et al., Defendants-Appellants.

Nos. 75–1871 and 75–1872.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1976.

Decided July 22, 1976.

James S. Gordon, Chicago, Ill., Mitchell F. Asher, Palatine, Ill., Alex H. Dolnick, Chicago, Ill., for Kozin.

Robert F. Coleman, Chicago, Ill., for Grace.

Before CUMMINGS, TONE and WOOD, Circuit Judges.

CUMMINGS, Circuit Judge.

Apart from a pendent Count, this treble damage action was brought under Section 4 of the Clayton Act (15 U.S.C. § 15) to recover damages allegedly sustained by plaintiff as a result of defendants' violations of Section 2(c) of the Robinson-Patman Act (15 U.S.C. § 13(c)). Plaintiff is the bankruptcy trustee for S. I. Greene Company (Greene). Greene was a Chicago wholesaler engaged in buying and selling frozen and prepared seafood products during the

1969–1972 period in suit. Defendant E. J. Kozin Company (Kozin) was a competitor of Greene and became incorporated on February 1, 1973. During the years in question, it was operated as a proprietorship by defendant Erwin Kozin, who became a principal shareholder, director and officer of the incorporated company. Defendant Bernard Kane, son-in-law of Greene's president, was sales manager and executive vice president of Greene from 1968 through January 1973, when he became a principal stockholder, director and president of Kozin even though he made no capital contribution. During the complaint period, Greene's sales ranged from a yearly low of $7 million to a high of $12 million. Also during that time Greene and Kozin sold seafood products on occasion to the same customers.

This controversy involves two sets of transactions engaged in by Kozin and Kane. Starting in October 1969, Kane convinced Greene to begin purchasing substantial quantities of seafood from Kozin.[1] At about that time Kane also convinced Kozin to permit him to represent Kozin as an agent in sales to customers other than Greene. Pursuant to the arrangement, Kozin agreed to pay Kane one-half of all profits Kozin realized on purchases made by Kane on behalf of Greene and also one-half of the profits Kozin made on sales to other customers where Kane sold Kozin products to them. Kane terminated his services with Greene in January 1973.

Count I of the complaint charged that Kozin and the successor corporation paid $19,780.64 in commissions, kickbacks, and brokerage fees to Kane in violation of Section 2(c) of the Robinson-Patman Act, thus compelling Greene to pay unreasonably high prices for seafood products purchased from Kozin by Kane.

Pendent Count II alleged that from November 1969 to December 1972, notwithstanding the fiduciary duty imposed upon him by Illinois law as an officer of Greene, Kane was paid commissions of $80,000 by Kozin, representing one-half of the profits earned by Kozin on sales placed by Kane to third parties during this period. Greene claims to have lost profits of $160,000 during this period because of Kane's wrongful diversion of business opportunities to Kozin while receiving $58,000 in salaries from Greene.[2]

After a bench trial, the district court ruled for the plaintiff in most respects. The court found that every witness lied when in his interest to do so, and the judge particularly doubted the credibility of Kane. He found that Kozin and Kane, while Kane represented Greene, bought from and sold products to one another and that Kane's personal profits from these transactions amounted to commercial bribery. He concluded that the three defendants were liable under Section 2(c) of the Robinson-Patman Act.

As to Count II with respect to breach of a fiduciary duty which prohibited Kane, as an agent of Greene, from personally profiting from transactions he handled for Greene, the district court found that Kane had never disclosed his relationship with Kozin to Greene,[3] so that the three defendants were also held liable under Illinois law.

Subsequently the district court entered an unreported memorandum opinion with respect to damages. As to Count I based on federal law, Judge McGarr stated that commissions paid to Kane upon sales of Kozin products to Greene amounted to $19,780.64 which, after trebling, entitled plaintiff to $59,341.92.

---

1. Count I also alleged that Kane convinced Greene to sell seafood products to Kozin and that because of the relationship between Kozin and Kane, Greene received unreasonably low prices. No proof was offered on this matter and the allegation does not concern us on appeal.

2. Count III, alleging violations of Section 1 of the Sherman Act (15 U.S.C. § 1), was dismissed

by the trial court during the course of the trial. It is not involved in this appeal.

3. Plaintiff introduced testimony that Kozin had known of Greene's policy against dual employment. Although defendants challenge this finding, we cannot say that it was clearly erroneous.

As to Count II based on Illinois law, after noting that Kozin paid Kane $60,075 in commissions upon sales made by Kane on behalf of Kozin to third parties (representing an equal split between Kane and Kozin of the profits of $120,150), the court concluded plaintiff should recover those entire profits because its own profits would have been almost identical. However, the court refused to award plaintiff the $58,000 compensation Greene paid Kane during the three years in question.

Accordingly, under Count I, judgment was entered for plaintiff in the amount of $59,341.92, plus interest, and under Count II, $120,150, plus interest. Subsequently, the court awarded plaintiff statutory attorney's fees under Count I in the amount of $18,690.

Defendants have appealed from the judgments against them under Counts I and II, and plaintiff has cross-appealed from the district court's refusal to allow plaintiff to recover the $58,000 compensation paid Kane during the period of his breach of fiduciary relationship.

■ Defendants' liability and the amount of damages in this case depend upon the characterization of the transactions involved. The defendants contend, and we agree, that Kozin and Kane had embarked upon a joint enterprise whereby they purchased seafood products and resold them to Greene and other companies (Br. 37). Under this analysis, the district court was clearly correct in concluding that Kane breached his fiduciary duty to his employer by not offering Greene the opportunity to participate in the joint venture. *Vendo Co. v. Stoner*, 58 Ill.2d 289, 303–305, 321 N.E.2d 1 (1974). Our duty is to determine the legal consequences of that breach of duty.

■ From this viewpoint, the district court correctly concluded that Kozin's inducement to Kane to participate in the joint venture constituted "commercial bribery." In Section 2(c) of the Robinson-Patman Act,[4] Congress concluded that under certain circumstances it is an unfair trade practice for an agent to serve two masters. See *Federal Trade Commission v. Henry Broch & Co.*, 363 U.S. 166, 169, n. 6, 80 S.Ct. 1158, 4 L.Ed.2d 1124; H.R.Rep.No.2287, 74th Cong., 2d Sess., pp. 14, 15 (1936). One of the purposes of this Section is to protect the integrity of the principal-agent relationship where a violation has an anti-competitive effect. *Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674, 696 (9th Cir. 1976); *Modern Marketing Service, Inc. v. Federal Trade Commission*, 149 F.2d 970, 978 (7th Cir. 1945). Therefore, although defendants argue that Section 2(c) of the Robinson-Patman Act does not reach commercial bribery cases such as this, we agree with the Sixth and Ninth Circuits that it does. *Kentucky-Tennessee Light & Power Co. v. National Coal Co.*, 37 F.Supp. 728 (W.D.Ky.1941), affirmed *sub nom., Fitch v. Kentucky-Tennessee Light & Power Co.*, 136 F.2d 12 (6th Cir. 1943); *Calnetics Corp. v. Volkswagen of America, Inc., supra*, 532 F.2d at 696; *Rangen Inc. v. Sterling Nelson & Sons*, 351 F.2d 851 (9th Cir. 1965), certiorari denied, 383 U.S. 936, 86 S.Ct. 1067, 15 L.Ed.2d 853.

■ Defendants next contend that plaintiff failed to prove that Greene suffered an injury to its business cognizable under the antitrust laws. However, had Greene participated in the joint venture instead of Kane, Greene would have received the commissions. Quite logically, the district court concluded that as a result of Kozin's payments to Kane of commissions on sales to

---

4. Section 2(c) of the Robinson-Patman Act provides:

"[That] it shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid." (15 U.S.C. § 13(c))

Greene, Greene paid a price for the products it purchased from Kozin which was higher than it would otherwise have paid except for the $19,780.64 in illegal commissions which Kozin paid Kane. From this evidence, the court could reasonably infer an injury to Greene. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114, 89 S.Ct. 1562, 23 L.Ed.2d 129; *Holleb & Co. v. Produce Terminal Cold Storage Co.*, 532 F.2d 29, 35 (7th Cir. 1976). The presence of the kickback effectively precluded the realization of Greene's maximum profit potential, so that the fact of damage was adequately established. Further, the net effect of Kozin's bribery was indirect price discrimination with regard to the prices charged Greene by suppliers potentially common to Kozin and Greene. Thus because of Kane's interest in the transactions, Greene acquired goods at a price higher than that paid by Kozin or than that which would have been paid by Greene purchasing independently or as Kozin's equal partner. This injury is entitled to redress under Section 2(c). *Federal Trade Commission v. Henry Broch & Co., supra*, 363 U.S. at 174, 80 S.Ct. 1158; see also *Rangen, Inc. v. Sterling Nelson & Sons, supra*, 351 F.2d at 857.[5]

■ Defendants finally contend that the services rendered defense to a Section 2(c) violation was established (see note 4 *supra*) on the ground that Kane clearly rendered economically valuable services to Kozin. This defense is inapplicable where, as here, an agent violates his fiduciary duty. *Ran-*

*gen, Inc. v. Sterling Nelson & Sons, supra*, 351 F.2d at 859; *Modern Marketing Services, Inc. v. Federal Trade Commission, supra*, 149 F.2d at 978–979; *Great Atlantic & Pacific Tea Co. v. Federal Trade Commission*, 106 F.2d 667, 674 (3d Cir. 1939), certiorari denied, 308 U.S. 625, 60 S.Ct. 380, 84 L.Ed. 521. Since there was no proof that if Kozin had not paid Kane commissions, the lower price to Greene would have violated Section 2(a) of the Robinson-Patman Act, it is unnecessary to consider that the holding below required Kozin to violate Section 2(a) of the statute in order to satisfy Section 2(c).[6]

■ The district court decided to award minimum damages to plaintiff under Count I. The court quite sensibly assumed that if Kane had given his total undivided loyalty to Greene, Kane would have negotiated for Kozin's lowest price, which would not have included any commission from Kozin to Kane. In other words, had Greene and Kozin been the joint venturers, Kozin would have agreed to a price equal to his proven price less the commission paid Kane, still allowing Kozin to realize his normal profit yet eliminating in part the price discrimination.[7] On this basis it was appropriate for the district court to conclude that plaintiff's damages under Count I were at least equal to the $19,780.64 commissions paid to Kane on Kozin's sales to Greene. *Bruce's Juices v. American Can Co.*, 330 U.S. 743, 757, 67 S.Ct. 1015, 91 L.Ed. 1219; *Fowler Manufacturing Co. v. Gorlick*, 415 F.2d 1248, 1250–

---

**5.** This argument is not weakened because all of Kane's purchases on behalf of Greene were made to fill pre-existing orders of Greene's customers. That fact does not show that the goods would have been unavailable elsewhere to Greene. Further, the fact that Greene and Kozin were competitors would not necessarily preclude their acting in concert on the purchase and sale of some products.

**6.** Defendants originally argued that if Kozin overcharged Greene, the overcharge was passed on by Greene to its customers so that its margin of profit was not affected. In response, Greene submitted that Kane only made purchases from Kozin to fill pre-existing customer orders, so-called back-to-back purchases, after the resale price of the product had

already been established. In their reply brief, defendants admit that a passing-on defense is not applicable in this case (Br. 18), so that we no longer need to consider the point.

**7.** The joint venture consisted in part of acquiring the seafood products. If Kozin and Greene are viewed as the participants, then it would be likely that the products would be intended for joint resale to third parties. In such a case, it would be reasonable for Kozin to retain his profit on those items used by Greene for its own purposes. The difference in price between that "purchase" and the "purchase" here would be the amount of the commission paid to Kane.

1252 (9th Cir. 1969), certiorari denied, 396 U.S. 1012, 90 S.Ct. 571, 24 L.Ed.2d 503.

To prove its damages under the breach of fiduciary duty pendent claim,[8] plaintiff established that Kozin had paid Kane commissions of one-half of Kozin's profit on Kane's sales to third parties on Kozin's behalf and that these commissions totaled $60,075, so that Kozin's total profit on those sales was $120,150. Defendants argue that the two companies' costs of doing business were certainly not identical, so that the district court's acceptance of the plaintiff's proof of Kozin's profits does not establish the precise amount of Greene's lost profits. Judge McGarr found that Greene and Kozin were "competitors dealing in the same market, selling the same product, purchasing from primarily the same sources, selling to substantially the same customers, frequently buying and selling to each other, with each being relatively the same size." The record shows that both Greene and Kozin were vest-pocket operations. Even though their volume of sales was much different, the trial court concluded that the plaintiff was entitled to receive as damages all of Kozin's profits on the sales to third parties.

■ The district court's ruling rests upon the assumption that even if Kane was obligated to offer Greene the opportunity to make all of the sales, not simply to participate as Kozin's partner, Greene was capable of doing so. The record does not support this argument. *Kerrigan v. Unity Savings Association*, 58 Ill.2d 20, 27, 317 N.E.2d 39 (1974). In addition, the measure of plaintiff's damages is Greene's lost profits, not those made by Kane and Kozin. *Henry's Drive-In, Inc. v. Anderson*, 37 Ill.App.2d 113, 125, 185 N.E.2d 103 (1st Dist.1962). Greene has not shown why it could not have produced evidence of its lost profits or profit margins to support its pendent breach of fiduciary relationship claim, nor has it shown satisfactorily why its lost profits would have approximately equalled Kozin's pertinent profits of $120,150.

■ We need not, however, void the damage award in its entirety. The transactions involved in Count II are in essence a joint enterprise between Kane and Kozin. Kane's duty was to allow Greene to be the participant in his place, thereby earning the amount of commissions received by Kane. Such participation by Greene would have involved no additional costs. We conclude therefore that plaintiff is entitled to recover the $60,075 paid to Kane. Kozin is jointly and severally liable by virtue of his participation in the joint enterprise. Prosser, Torts, § 72 (4th Ed.1971).

■ Finally, on the cross-appeal, plaintiff has not challenged the district court's finding that Kane earned his $19,000 per year salary during the three years in question. Regardless, *Vendo Co. v. Stoner, supra*, 58 Ill.2d at 314, 321 N.E.2d 1, requires the forfeiture of Kane's salary to Greene because of Kane's breach of his fiduciary duties. The forfeiture does not depend upon whether the employee earned the salary, but is intended as a deterrent to wrongful conduct.

Judgment affirmed as to Count I and vacated and modified as to Count II.[9]

---

**8.** Defendant does not challenge on appeal the finding of the breach of Kane's fiduciary duty.

**9.** Under Count I, plaintiff is entitled to $59,341.92 plus interest and attorney's fees of $18,690. Under Count II, plaintiff is entitled to $60,075 plus $58,000, together with interest on said amounts. Costs will be taxed against defendants.