**EDISON ELECTRIC INSTITUTE,**
Plaintiff,

v.

**Jerry HENWOOD, a.k.a. Jerome Henwood, and Results Computer Services, Inc., Defendants.**

**Civ. A. No. 92–1040–LFO.**

United States District Court,
District of Columbia.

Jan. 11, 1993.

Richard K. Walker, Joan B. Tucker Fife, and Michael L. Sibarium, for EEI.

Mark Scott London, Washington, DC, for defendants.

## MEMORANDUM AND ORDER

OBERDORFER, District Judge.

This matter is before the Court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's nine-count Second Amended Complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and the Robinson–Patman Act, 15 U.S.C. § 13(c), as well as several pendent state law claims. Defendants argue that the complaint fails to state claims under RICO and Robinson–Patman, and that the remaining state claims should be dismissed under the authority of *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). For the reasons stated below, defendants' motion to dismiss will be denied.

### I.

Plaintiff Edison Electric Institute (EEI) is a Virginia non-stock corporation with its principal place of business in Washington, D.C. Defendant Jerry Henwood is an individual resident and citizen of Maryland. Henwood is the President and Treasurer of defendant Results Computer Services, Inc. (Results), a Virginia corporation with its principal place of business in Maryland.

The complaint alleges that Henwood and Results defrauded EEI by systematically ex-

erting control over an EEI employee through bribes and kickbacks. Pursuant to this scheme, plaintiff alleges, defendants obtained business from EEI for themselves and for others with whom they were associated and submitted to EEI fraudulent invoices for materials and services that they never provided.

According to the complaint, the target of the bribes was EEI's Director of Library Sciences and Information Systems. He was responsible for purchasing all computer equipment, services, and materials for EEI. Complaint ¶ 7. The EEI employee was a manager and a fiduciary of EEI, and controlled a budget of approximately $1,100,000 in 1991 and over $800,000 in 1990. He also had significant control over other budgets, such as the capital expenditure budget and the relocation budget. Under these budgets, according to plaintiff, he exerted control over an additional $284,000 in 1991 and $1,600,000 in 1990. *Id.*

Plaintiff alleges that, between June 1988 and March 1992, Henwood, Results, and the EEI employee "devised and executed a scheme to defraud EEI and to obtain money from EEI using false pretenses," utilizing the United States Postal Service and telephones in interstate commerce. *Id.* at ¶ 6. The complaint avers that Henwood and Results submitted at least 33 invoices to EEI totalling $124,460 for goods and services that were never provided. *Id.* at ¶¶ 15, 19. The EEI employee, knowing that he would receive kickbacks, allegedly approved these invoices, and EEI made payment on the invoices to Henwood and Results. *Id.* at ¶ 14. Henwood and Results allegedly sent the EEI employee kickbacks through the mail for the invoices that EEI paid. *Id.* at ¶ 16.

In addition, plaintiff alleges, Henwood and Results arranged through the EEI employee for EEI to do business with three vendors with which Henwood and Results were associated, Trawick & Associates (Trawick), Toppe Associates, Inc. (Toppe), and Condor Financial Services, Inc. (Condor). *Id.* at ¶ 20. Trawick, Toppe, and Condor submitted at least 56 invoices to EEI. The EEI employee, knowing that he would receive kickbacks for this business, allegedly approved

the invoices, for which EEI paid a total of $644,202. *Id.* at ¶¶ 28, 31. According to the complaint, Trawick, Toppe, and Condor paid Henwood and Results at least $123,553 for the EEI business. Henwood and Results sent a portion of that amount to the EEI employee as a kickback. *Id.* at ¶¶ 33, 34.

The complaint further alleges that defendants arranged for the EEI employee, Toppe, and Henwood to set up a venture called Optimum Computer Services (Optimum). Optimum allegedly offered goods and services to EEI without disclosing the EEI employee's interest in Optimum, or the fact that the EEI employee would receive a payment for money received from EEI. *Id.* at ¶ 37. EEI paid Optimum at least $157,346 for goods and services. A portion of that amount was disbursed to the EEI employee in the form of kickbacks, according to the complaint. *Id.* at ¶¶ 37, 49.

### II.

■ The allegations in the complaint are taken as true for purposes of a motion to dismiss under Rule 12(b)(6). Such a motion should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Defendants contend that the complaint fails to state a claim under either the RICO statute or the Robinson–Patman Act.

### A.

The RICO statute provides that it "shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c).

### 1.

■ Initially, defendants appear to suggest that EEI cannot be both the plaintiff and the RICO "enterprise." As defendants themselves concede, however, the case law is to the contrary. *See, e.g., United Energy Owners Comm., Inc. v. United States Energy*

*Management Sys., Inc.,* 837 F.2d 356, 362 (9th Cir.1988). Nothing in either the RICO statute itself or the case cited by defendants, *Rodriguez v. Banco Central,* 777 F.Supp. 1043 (D.P.R.1991), supports defendants' proposition.

### 2.

Defendants argue more vigorously that they did not "conduct or participate" in the conduct of the enterprise's affairs. They rely on *Yellow Bus Lines, Inc. v. Local Union 639,* 913 F.2d 948 (D.C.Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991), in which the *en banc* Court of Appeals held that a union's recognition strike against an employer did not constitute participation in the conduct of the employer's affairs. The court in *Yellow Bus Lines* considered different standards of participation that courts have applied under § 1962(c) and opted for the relatively restrictive version articulated by the Eighth Circuit in *Bennett v. Berg,* 710 F.2d 1361, 1364 (8th Cir.), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983): "A defendant's participation must be in the conduct of the affairs of a RICO enterprise, which ordinarily will require some participation in the operation or management of the enterprise itself." *Id., quoted in Yellow Bus Lines,* 913 F.2d at 953. The *Yellow Bus Lines* court fleshed out the standard further:

> In order to participate in the conduct of an enterprise's affairs, then, a person must participate, to some extent, in "running the show." ... Section 1962(c) applies when a defendant, through a pattern of racketeering activity, exercises significant control over or within an enterprise, participating not merely in the enterprise's affairs, but in *the conduct* of the enterprise's affairs. Most often the participation requirement will be satisfied when a defendant either participates in directing the enterprise to-

ward its preexisting goals or participates in exercising control over an enterprise so as to reset its goals.

913 F.2d at 954.

On its facts, *Yellow Bus Lines* is readily distinguishable from the present case. In *Yellow Bus Lines* there were no allegations that the union had attempted to acquire, through corruption, actual control over the company's operations and decisions. The alleged pattern of corruption was simply in the conduct of the union's own affairs.

■ Although it is a closer question, the standard of participatory conduct set forth in *Yellow Bus Lines* is met here. The complaint alleges an elaborate scheme whereby Henwood bribed the EEI employee in order to divert lucrative EEI contracts to Henwood and his company, as well as to Trawick, Toppe, Condor, and Optimum. In essence, Henwood and Results exercised control over the EEI employee, who in turn managed and controlled EEI's purchasing with a million-dollar budget. Thus, defendants did "participate, to some extent, in 'running the show.'" *Id.* The court in *Yellow Bus Lines* did make clear that it was adopting a relatively strict version of the participation requirement; it indicated, for example, that some participation in the enterprise's "operation or management" would ordinarily be required.[1] Nevertheless, the court also emphasized that that participation could be indirect, and could include participation by "outsiders" as well as "insiders." *Id.* It is difficult to imagine what sorts of indirect, "outsider" participation the court intended to preserve if not the kind of control allegedly exerted here. Indeed, the original panel opinion in *Yellow Bus Lines* noted that "a number of courts have permitted RICO actions in bribery cases against those seeking to influence organizations in which they hold no official position of authority." 883 F.2d 132, 143

---

1. The following passage in the *Yellow Bus Lines* court's opinion may also give one pause: "We see no logical reason why a union attempting to gain recognition from a company is any more participating in the conduct of the company's affairs than is any other external entity attempting to contract with the putative enterprise." 913 F.2d at 955. One might initially suppose that Henwood and Results were merely "external entit[ies] attempting to contract with" EEI. The court's point, however, was that an entity's mere attempt to contract with an enterprise does not, by itself, constitute participation in *the conduct* of the enterprise's affairs. But the allegations reveal that Henwood and Results did much more than attempt to contract with EEI: they exerted control over EEI's actual decisions through a sophisticated bribery scheme.

(D.C.Cir.1989) (citing cases). Although the panel opinion was vacated on rehearing *en banc,* the *en banc* opinion suggests no disapproval of these holdings.[2]

The *Yellow Bus Lines* court used an example to illustrate the participation requirement. The hijacker of an individual airplane, the court explained, does not sufficiently participate in the conduct of the airline's affairs to meet the participation standard under § 1962(c). One who hijacks the *airline,* however, "as for example by either directly or indirectly taking control of its executive management positions," would satisfy the requirement. *Id.* 913 F.2d at 955. The allegations in this case come closer to the latter scenario. The defendants, through the EEI employee, "hijacked" a substantial sphere of EEI's purchasing decisions, not simply a discrete asset in EEI's corporate arsenal.

### 3.

Defendants also argue that plaintiff's allegations fail to make out a "pattern of racketeering activity" as required by 18 U.S.C. § 1962(c). The statute defines that phrase as including "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). In the leading case on RICO's pattern requirement, the Supreme Court taught that the requirement includes two elements: the "relatedness" element, and the "continuity" element. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). Defendants contend that the continuity element has not been satisfied here.

■ The continuity element is satisfied if the predicate acts "amount to, or . . . otherwise constitute a threat of, continuing racketeering activity." *Id.* at 240, 109 S.Ct. at 2901. Continuity can be established either by a closed-ended period of repeated conduct, such as a series of related predicates extending over a substantial period of time, or by past conduct which, by its nature, projects into the future with a threat of repetition. *Id.* at 241–43, 109 S.Ct. at 2901–02.

■ Plaintiff's allegations are sufficient to establish continuity under both the closed-ended and open-ended approaches. This Court has noted that continuity is "primarily a temporal concept." *Pyramid Securities, Ltd. v. International Bank,* 726 F.Supp. 1377, 1383 (D.D.C.1989), *aff'd,* 924 F.2d 1114 (D.C.Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 85, 116 L.Ed.2d 57 (1991). While there is no clear rule defining a substantial period of time, the case law leaves little doubt that the four-year period alleged here is sufficient. *Compare Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1296 (7th Cir.1992) (eight-month scheme meets pattern requirement); *Atlas Pile Driving Co. v. DiCon Fin. Co.,* 886 F.2d 986, 994–95 (8th Cir.1989) (three-year scheme meets pattern requirement); *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir.1989) (two-year scheme meets pattern requirement); *Swistock v. Jones,* 884 F.2d 755, 759 (3d Cir.1989) (fourteen-month scheme meets pattern requirement), *with Pyramid Securities,* 726 F.Supp. at 1384 (three-month scheme fails to meet pattern requirement); *Parcoil Corp. v. NOWSCO Well Serv., Ltd.,* 887 F.2d 502, 503 (4th Cir.1989) (four-month scheme fails to meet pattern requirement); *Sutherland v. O'Malley,* 882 F.2d 1196, 1204–05 (7th Cir.1989) (five-month scheme fails to meet pattern requirement).

■ In addition to the length of the period of time, other factors that may be relevant to the continuity issue include: (i) the number and variety of predicate acts; (ii) the number of victims; (iii) the number of perpetrators; (iv) the presence of separate schemes; and

---

**2.** At least one court has applied the Eighth Circuit's RICO participation standard from *Bennett v. Berg* (adopted by this Court of Appeals in *Yellow Bus Lines* ) to facts involving potential bribery. In *United States v. Kaye,* 586 F.Supp. 1395 (N.D.Ill.1984), the defendant had worked one day per month as a part-time holiday court bailiff, although he was not employed by the court. The defendant had solicited and received money for the asserted purpose of influencing

judges, but had never delivered any money to the judges. Judge Shadur applied the *Bennett* standard and dismissed the count, concluding that the defendant had not "participated in the conduct" of the court's affairs because he had not delivered any money to the judges or influenced the court. *Id.* at 1400. Under the reasoning of *Kaye,* if the acts of bribery had been consummated—as they were in the instant case—the participation requirement would have been met.

(v) the occurrence of distinct injuries. *Pyramid Securities*, 726 F.Supp. at 1383. The allegations include numerous and varied predicate acts over the four-year period. In addition to the 33 fraudulent invoices submitted by Henwood and Results themselves, the allegations include payments to the EEI employee; connecting the EEI employee to the representatives of Trawick, Toppe, and Condor; funneling payments from those companies to the EEI employee; the submission of numerous invoices by those companies to EEI; and the creation of Optimum. In the same way, the alleged pattern appears to have consisted of several different schemes. In addition, although EEI was the only victim of the alleged scheme and Henwood and Results are the only defendants, other participants in the scheme include the EEI employee, Toppe, Trawick, Condor, and Optimum. Finally, each invoice submitted and each kickback paid caused a separate injury to EEI. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

Moreover, plaintiff's allegations satisfy the open-ended test for continuity. The allegations of defendants' organized and ongoing pattern of dealings with EEI suggest that the acts were part of their "regular way of doing business" with EEI. *H.J. Inc.*, 492 U.S. at 243, 109 S.Ct. at 2902. The allegations thus support a threat of continued future racketeering activities. *See United States v. Alexander*, 888 F.2d 777, 778 (11th Cir.1989), *cert. denied*, 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 643 (1990); *United States v. Gelb*, 881 F.2d 1155, 1164 (2d Cir.), *cert. denied*, 493 U.S. 994, 110 S.Ct. 544, 107 L.Ed.2d 541 (1989).

The allegations are sufficient to satisfy RICO's "pattern" requirement for purposes of surviving a motion to dismiss.

**B.**

Defendants also move to dismiss Count VII, which alleges a violation of § 2(c) of the Robinson–Patman Act, 15 U.S.C. § 13(c).[3] They argue that EEI lacks standing to sue under § 2(c) because it has not alleged any "antitrust injury."

Antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977); *see also* Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 334.2a, at 370 (1991 Supp.) (injury that "match[es] the rationale for finding any violation in the first place"). The question, therefore, is whether § 2(c) prohibits the conduct alleged in the plaintiff's complaint. The clear majority of authorities hold that § 2(c) does prohibit commercial bribery as is alleged by plaintiff. *See e.g., Harris v. Duty Free Shoppers Ltd. Partnership*, 940 F.2d 1272, 1274 (9th Cir.1991); *Environmental Tectonics v. W.S. Kirkpatrick, Inc.*, 847 F.2d 1052, 1066 (3d Cir.1988), *aff'd*, 493 U.S. 400, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990); *Grace v. E.J. Kozin Co.*, 538 F.2d 170 (7th Cir.1976); *Rangen, Inc. v. Sterling Nelson & Sons, Inc.*, 351 F.2d 851, 858 (9th Cir.1965), *cert. denied*, 383 U.S. 936, 86 S.Ct. 1067, 15 L.Ed.2d 853 (1966); *Fitch v. Kentucky–Tennessee Light & Power Co.*, 136 F.2d 12 (6th Cir.1943); *Gregoris Motors v. Nissan Motor Corp.*, 630 F.Supp. 902 (E.D.N.Y.1986). In enacting § 2(c), Congress had at least two objectives: to prevent large buyers from extracting hidden price discounts from suppliers in the form of "dummy brokerage" payments; *and* to prohibit commercial bribery that tended to undermine the fiduciary relationship between a buyer and its agent. *See Stephen Jay*

---

**3.** That section provides:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is granted or paid.

15 U.S.C. § 13(c).

*Photography, Ltd. v. Olan Mills, Inc.*, 903 F.2d 988, 991–93 (4th Cir.1990); S.Rep. No. 1502, 74th Cong., 2d Sess. 7 (1936).

Defendants rely on *Federal Paper Bd. Co. v. Amata,* 693 F.Supp. 1376, 1389 (D.Conn 1988), in which the court dismissed a § 2(c) complaint because of the plaintiff's failure to allege that it had lost sales or profits to a competitor on account of the alleged bribery. The court's reasoning, however, rested solely on the price discrimination/dummy brokerage rationale of § 2(c) and ignored the commercial bribery rationale. In addition, the *Amata* approach would work particular hardship on not-for-profit trade associations such as EEI, which do not have "competitors" to siphon off sales or profits. At any rate, *Amata* represents a minority view and will not be followed here. *See* Earl W. Kintner & Joseph P. Bauer III, *Federal Antitrust Law* § 26.12, at 530 (1983). The other case relied upon by defendants, *Seaboard Supply Co. v. Congoleum Corp.,* 770 F.2d 367, 372 (3d Cir. 1985), agrees with the majority of courts that § 2(c) encompasses commercial bribery, although it limits its application to payments that "cross the seller-buyer line." *Id.* The payments alleged here clearly did cross the seller-buyer line, defendants' conclusory assertion to the contrary notwithstanding.

■ Finally, defendants argue briefly that the Robinson–Patman claim should be dismissed because it fails to allege that plaintiff suffered "competitive injury." This argument can be disposed of briefly: Section 2(c) (unlike Section 2(a)) contains no requirement of anti-competitive effect or injury. *FTC v. Simplicity Pattern Co.,* 360 U.S. 55, 65, 79 S.Ct. 1005, 1011, 3 L.Ed.2d 1079 (1959); *Seaboard Supply,* 770 F.2d at 371 n. 3.

\* \* \* \* \* \*

For the foregoing reasons, it is this 11th day of January, 1993, hereby

ORDERED: that defendants' motion to dismiss should be, and is hereby, DENIED.