**SCANDINAVIAN AIRLINES SYSTEM DENMARK–NORWAY–SWEDEN, Plaintiff,**

v.

**McDONALD'S CORPORATION, Chicago Aviation Partners, a joint venture of McDonald's Corporation and Duty Free International, Inc., and Carson International Inc., Defendants.**

No. 94 C 2269.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 16, 1996.

Michael R. Blankshain, Wildman, Harrold, Allen & Dixon, Chicago, IL, James C. How-

ell, Keith C. Couthrell, Jr., Mark D. Stiles, Willcox & Savage, P.C., Norfolk, VA, for plaintiff.

Barry B. Gross, Shefsky, Froelich & Devine, Ltd., Chicago, IL, Douglas C. Gessner, McDonald's Corporation, Oak Brook, IL, Eric A. Oesterle, Sonnenschein, Nath & Rosenthal, Chicago, IL, Samuel Glenn Harrod, IV, Meltzer, Purtill & Stelle, Schaumburg, IL, for McDonald's Corporation, Chicago Aviation Partners.

George Nathan Gilkerson, Jr., Scott M. Hardek, Rooks, Pitts & Poust, Wheaton, IL, for Carson International, Inc.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff, Scandinavian Airlines System Denmark–Norway–Sweden, has filed a three-count second amended complaint against defendants McDonald's Corporation, Chicago Aviation Partners, and Carson International, Inc. alleging breach of contract, appropriation of business opportunity, and breach of fiduciary duty. Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56 on all counts. For the reasons set forth below, the court grants defendant's motion.

## FACTS

In December 1990, the City of Chicago issued a request for proposal No. C–96191001 ("RFP1"), seeking proposals for the development and operation of the concessions and duty-free shops at the international terminal at O'Hare Airport. Shortly thereafter, plaintiff, McDonald's and Carson entered into discussions about creating a joint venture for the purposes of operating the concessions and duty-free shops. The parties disagree as to whether any joint venture was formed, and if formed, the extent of its purpose and when it terminated. Plaintiff asserts that a joint venture was formed for the purpose of obtaining the contract from the City, and operating pursuant thereto. Defendants assert that no joint venture was ever formed, that the parties merely agreed to submit a proposal pursuant to RFP1, which they did, and that all obligations ended at that point.

On March 29, 1991, plaintiff, McDonald's and Carson signed a letter of intent (the "Letter of Intent"), which is the only document signed by all three parties that purports to define any rights and obligations. The preamble to that letter indicates that its purpose was to set forth the parties' mutual intent with respect to the negotiation or transaction between the three whereby a joint venture "would be formed for the purpose of performing the obligations of the concession developer/operator for the new international terminal at O'Hare International Airport." The Letter of Intent also indicates that it was subject to execution by the parties of a definitive agreement covering the transaction, and was not binding on any party except as expressly set forth.

Paragraph 1 of the letter, titled "Submission of Proposal," provides that the parties will use their best efforts to jointly formulate and timely submit a proposal in response to RFP1. The proposal was to indicate that performance would be through a joint venture owned equally by the three parties. Paragraph 2, entitled "Exclusivity," provides that "for a period of thirty days after the date hereof, no party hereto shall, directly or indirectly, solicit or initiate discussions concerning, or enter into negotiations with, any other party concerning joint submission of a proposal for the Project." Paragraph 4, entitled "Joint Venture," provides that the parties will promptly commence negotiations in good faith to complete preparations of the Agreement on the terms contemplated in the letter. Finally, paragraph 12 indicates that the letter is a letter of intent only, and that no party shall have any legal obligation to the others as a result of the letter, other than the obligations contained in paragraphs 1, 2 through 4, 12 and 13.

It is undisputed that the parties used their best efforts to formulate a proposal, and that a proposal was in fact submitted to the City on April 1, 1991. That proposal was submitted in the name of "Creative Forces Partnership," the name the letter of intent set forth as the name of the planned joint venture. The cover letter submitted with the proposal specifically states that Creative Forces Partnership "is planned as a joint venture of

Carson International/Dobbs Houses, McDonald's Corporation and SAS Trading...." The proposal itself, however, indicates that Carson, McDonald's and SAS "have formed a joint venture." It also indicates that the joint venture is "to be" owned equally by McDonald's, SAS and Carson, and that it will be organized as a partnership under Illinois law. Additionally, in the disclosure of ownership interest, the proposal indicates one-third ownership by each partner, and that "the parties have signed a letter of intent. It is contemplated that formal partnership documents will be prepared after the bid award."

In June 1991 the parties made a joint oral presentation to the City in support of their proposal, and in July they submitted a supplemental response per a request from the City.

On July 2, 1992, the City selected Host International as the successful bidder, and began to negotiate a contract with it. By letter dated July 27, 1992, the City informed the parties that it had selected another firm, and intended to proceed to negotiate an agreement with that firm.

On or about November 6, 1992, however, the City terminated its negotiations with Host because Host had been purchased by Marriott. The following month, the City re-issued a request for proposal ("RFP2"). In January 1993, McDonald's and Duty Free International, Inc. submitted a proposal to the City in response to RFP2 under the name Chicago Aviation Partners ("CAP"). CAP's proposal was accepted on February 13, 1993, and CAP and the City entered into a contract on March 25, 1993.

In this lawsuit plaintiff alleges that by failing to inform it of RFP2, and by entering into a contract with the City in response to RFP2, McDonald's breached its joint venture agreement with Carson and plaintiff.

## DISCUSSION

Plaintiff has sued defendants for breach of contract, appropriation of business opportunity, and breach of fiduciary duty. The first count obviously sounds in contract, while the other two are torts. Nonetheless, the parties are in agreement that the success of all three counts is determined by the relationship between them. Defendants assert that that relationship is governed solely by the Letter of Intent, which is the only written agreement signed by all three parties, and that any obligations and rights among them are defined by that letter. Plaintiff, on the other hand, asserts that the parties entered into an oral joint venture relationship for the purpose of seeking the contract from the City. Plaintiff admits, however, that that relationship was "initially formed in the letter of intent," but asserts that the parties' joint efforts began before the execution of and extended well beyond that letter's terms, as evidenced by subsequent oral and written representations and course of conduct.

A joint venture is an association of two or more persons to carry on a single enterprise for profit. Partnership legal principles govern joint ventures, and the only distinction of consequence between the two is that a joint venture relates to a single enterprise or transaction, whereas a partnership relates to a general business of a particular kind. A joint adventurer, like a partner or corporate officer or director, is a fiduciary and owes a duty of loyalty to the person or entity for whom it acts. *Dremco, Inc. v. South Chapel Hill Gardens, Inc.*, 274 Ill. App.3d 534, 538, 211 Ill.Dec. 39, 654 N.E.2d 501 (1st Dist.1995).

The existence of a joint venture is inferred from the facts and circumstances, with the intent of the parties being the most significant element. Generally, the following elements are determinative of such intent: (1) an express or implied agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be associated as joint venturers; (3) a joint interest, as shown by contribution of property, natural resources, effort, skill, or knowledge; (4) a degree of joint proprietorship or mutual right to the exercise of control over the enterprise; and (5) provision for joint sharing of profits and losses. *Nobelpharma Ab v. Implant Innovations, Inc.*, 930 F.Supp. 1241, 1255 (N.D.Ill. 1996).

In the instant case, the key inquiry is the expressed or implied agreement to carry on "some enterprise." The plaintiff charac-

terizes the enterprise as one to pursue a contract with the City, while defendants assert that if a joint venture existed at all, it was for the limited purpose of submitting a proposal or a response to RFP1. This difference is critical, for if the purpose of the joint venture was only to submit a proposal (and all necessary follow-up) then, as defendant asserts, all obligations were completed when the proposal was submitted and rejected. If, on the other hand, as plaintiff asserts, the joint venture was formed to pursue the contract with the City, then defendants arguably had an obligation to inform plaintiff of and work with plaintiff to prepare a proposal in response to RFP2.

While the parties do not agree on much, they do agree that whatever relationship existed between them was formed, at least initially, by the Letter of Intent. That letter clearly indicates that: (1) no joint venture had yet been formed; and (2) none of the parties had any legal obligation to the others except as set forth in the letter. Those obligations were to jointly formulate and timely submit a proposal in response to RFP1, to maintain confidentiality, to commence negotiations promptly in good faith to complete preparation of a joint venture agreement, and to refrain, for a period of thirty days after the date of the letter, from directly or indirectly soliciting or initiating any discussions concerning or entering into any negotiations with any other party concerning joint submission of a proposal for the project. It is thus clear, as defendants argue, that pursuant to the Letter of Intent, they had no obligations to plaintiff other than to submit the proposal for the RFP, which they did. The Letter of Intent also very succinctly illustrates the parties' intent that a joint venture would be formed to operate the concessions and duty-free shops, if they were awarded the contract. They were not.

Recognizing that the Letter of Intent limits defendants' obligations to working to submit the proposal, plaintiff argues that the parties' subsequent actions and representations demonstrate that they actually formed the "Creative Forces Joint Venture." Specifically, plaintiff relies on the fact that the written proposal: (1) lists the submitting entity as "Creative Forces Partnership" and indicates that Creative Forces is a joint venture of Carson, McDonald's and SAS Trading; (2) sets forth substantial information regarding the backgrounds and operations of each venturer; (3) contains detailed financial proposals and a marketing plan; and (4) actually indicates that the parties "have formed" a joint venture. Of course, as already indicated above, the proposal and the cover letter also specifically indicate that no joint venture had yet been formed, and that the parties had signed a letter of intent with a formal partnership agreement to be executed after they receive the contract. Thus, plaintiff's reliance on any reference in the proposal to an existing joint venture is misplaced. The proposal clearly indicates that the only formal agreement between the parties was the Letter of Intent, and that letter contained very specific and limited obligations.

Plaintiff further argues that the fact that the parties exchanged numerous drafts of formal partnership documents that would govern operations of the concessions if the joint venture was granted the contract evidences the parties' then existing status as partners actively pursuing the contract. The court disagrees. The Letter of Intent was intended to identify the status of the parties prior to the award of contract, and that document limits the obligations to submitting a proposal.

The court agrees with defendants that the issue in this case is what relationship, if any, existed among the parties after the City rejected their proposal. The Letter of Intent indicates none, and plaintiff has submitted no evidence to suggest otherwise.

Indeed, the original draft of the Letter of Intent contained two provisions not included in the final draft that support this conclusion. The first provided that the purpose of the partnership would be threefold: (a) to submit a proposal; (b) if awarded the contract, to operate the concessions in accordance with the terms of the proposal and partnership agreement; and (c) to engage in other necessary activities to achieve (a) and (b). This provision also provided that "no party to this letter, nor any of their respective affiliates,

participate in the making of any proposal for the [international] terminal 5 concessions except through the partnership." This quoted provision, which was requested by plaintiff, was ultimately rejected by the parties in favor of the clause that allowed any party to submit other proposals with other partners after thirty days. It is clear that the parties did not intend to be limited to working with each other, even with respect to RFP1, after the thirty days following submission of the bid.

The second provision, also ultimately rejected, provided that if the partnership was not the successful proponent, the partnership would terminate when another party signed a contract for the concessions. Additionally, plaintiff requested a provision that provided that after a proposal was submitted no partner would have the right to withdraw from the partnership until its scheduled expiration. These provisions illustrate that plaintiff proposed an existing partnership before the award of the contract, but that proposal was ultimately rejected in favor of the Letter of Intent actually signed.

Finally, defendants are correct that plaintiff cannot point to a single act occurring after the parties received the City's July 27, 1992, letter notifying them that it had accepted Hosts' proposal, that suggests that they were still working together in any manner. Indeed, plaintiff's former general manager of airport shops, Robert Hernardi, testified that after receiving the July 27, 1992 letter the parties' proposal was "dead."

It is thus clear that any relationship that existed between the parties ended when the city rejected its proposal. Because no such relationship existed, there was no breach of contract, and there was no appropriation of any business opportunity or breach of fiduciary duty. Therefore, McDonald's was free to submit a proposal to the RFP2 with another partner. Accordingly, defendant's motion for summary judgment is granted.[1]

---

1. Because the court has determined that no joint venture relationship existed requiring defendants to inform plaintiff of RFP2, there is no need to

reach defendant's additional arguments that any such relationship must have terminated as a result of Carson's sale in May 1992.