PETERSON WELDING SUPPLY COMPANY, INC., Plaintiff-Appellant, *v.* CRYOGAS PRODUCTS, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 83—526

Opinion filed August 6, 1984.

Edward V. Donovan, Jr., James J. McManus, and Saulius V. Kuprys, all of Henehan, Donovan & Isaacson, Ltd., of Chicago, for appellant.

James H. Wolf and Francis K. Tennant, both of Hedberg, Tobin, Corrigan & Wolf, of Chicago, for appellee Edmund M. Tobin.

Earl B. Lichten and Christopher J. Horvay, both of Berger, Newmark & Fenchel, of Chicago, for other appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Peterson Welding Supply Corporation, appeals from a judgment which was entered in favor of defendants, Cryogas Products, Inc., Savant Welding Supply Company, Edmund M. Tobin, Marcella Savant and Edward Savant, which denied plaintiff's claim for relief from the alleged loss of·a corporate opportunity. Plaintiff raises the following issues on appeal: (1) whether there was a breach of fiduciary duty by corporate personnel with regard to the acquisition of a going concern; (2) whether plaintiff's attorney breached his fiduciary duty to plaintiff by engaging in activities affecting plaintiff's alleged corporate opportunity; (3) whether the trial court's finding in favor of defendant was against the manifest weight of the evidence; (4) whether the trial court abused its discretion in finding plaintiff guilty

of *laches*; and (5) whether the trial court erred in its rulings regarding the admission of certain testimony during the course of the trial.

The record discloses that plaintiff filed a 60-page second amended complaint consisting of 14 counts. The complaint, which contained four counts each against Cryogas, Savant Welding and Tobin, and one count each against Marcella and Edward Savant, alleged in general that defendants were guilty of misappropriation of business opportunities and of self-dealing. Specifically, the allegations against Edmund M. Tobin attacked Tobin's participation in the formation of Cryogas Products, Inc., as a conflict of interest in his capacity as plaintiff's counsel. Plaintiff also alleged that Tobin's improper conduct resulted in a profit of $20,000 to Tobin at plaintiff's expense.

Prior to trial, defendants waived the Dead Man's Act (Ill. Rev. Stat. 1981, ch. 110, par. 8—201), thereby permitting James O'Donnell, president of plaintiff corporation, to testify as to any statements made by either Erman C. Savant (Savant) or Clifford D. McGuinn, who were both deceased at the time of trial and who were both principals in the alleged self-dealing.

At the close of plaintiff's case, all of the defendants except attorney Edmund M. Tobin rested their cases without offering any evidence. Tobin offered evidence to counter plaintiff's allegation that he was plaintiff's general counsel. Tobin noted that he performed services for plaintiff on an "as-requested" basis. He also asserted that since he was paid only when services were rendered, there was no evidence that a retainer relationship existed between plaintiff and himself. Tobin then rested his case. Thereafter, the trial court made extensive findings of facts which will be summarized here. The court found that plaintiff, a retail distributor of industrial gases and equipment of the Chemetron Corporation, was owned by James O'Donnell and Savant, who together also constituted a majority of plaintiff's board of directors. Savant was also plaintiff's chief operating officer. In 1971, Chemetron, a wholesale distributor of industrial gases, decided to divest itself of its wholesale bulk liquid business and retail cylinder business. Plaintiff, by its board of directors, contemplated an expansion of plaintiff's business and authorized its corporate officers to take steps towards the acquisition of Chemetron's distributorship. McGuinn, a former president of Chemetron, was then hired by plaintiff to aid in acquiring the distributorship, and he and Savant located premises suitable for the proposed expansion. A lease of the premises was then executed on behalf of Savant and Cryogas with an option to purchase the premises in favor of Savant. Cryogas was incorporated on January 11, 1974, with Savant, McGuinn and Tobin constituting

the corporation's shareholders and board of directors. Cryogas then executed a sublease of 50% of the premises to plaintiff which was signed by Savant on behalf of plaintiff. Cryogas and plaintiff then operated out of the same premises and shared the expenses of the building operation.

In 1974, Chemetron selected Cryogas as the company to acquire its wholesale master distributorship. According to Chemetron personnel, Chicago area retail distributors would not do business with a combined wholesale-retail operation and therefore plaintiff, being a retailer, was not a feasible selection for the wholesale distributorship. It was further asserted that plaintiff had only been considered by Chemetron as a possible distributor because Savant had at one time been employed by Chemetron.

At trial, O'Donnell testified that Savant had asked him to become an investor in Cryogas; however, O'Donnell refused the offer, saying, "You know I don't buy into anything I don't control." Further testimony revealed that O'Donnell knew that Cryogas was a separate corporation from plaintiff and that O'Donnell abided by a request from Savant that O'Donnell not discuss his objection to Cryogas' being a separate corporation in front of Tobin. O'Donnell asserted, however, that he insisted on numerous occasions that Cryogas become part of plaintiff corporation.

The record further discloses that in September 1976, following the death of Savant, O'Donnell entered into an agreement with Marcella Savant, who succeeded to the ownership of plaintiff's shares upon the death of Savant, to amend the terms of the lease between Cryogas and plaintiff. Marcella also agreed to sell her shares in plaintiff corporation to O'Donnell. No further evidence was introduced by plaintiff against Marcella, and no evidence was introduced against defendant, Edward Savant and Savant Welding Supply Company. The suit in this case was filed in October 1977, one year after the agreement between O'Donnell and Marcella.

Initially we note that although plaintiff has raised numerous issues on appeal, we believe that the threshold issue to be addressed in this case is whether the trial court erred in finding that defendants had not breached their fiduciary duty to plaintiff by acquiring the wholesale distributorship where no corporate opportunity existed for plaintiff. Plaintiff's other contentions, that Tobin breached his fiduciary duty to plaintiff, and that the trial court's finding in favor of defendants was against the manifest weight of the evidence, will be considered in addressing the threshold question.

We now address the issue whether the trial court erred in not

finding a breach of fiduciary duty by defendants in acquiring the wholesale distributorship. Plaintiff argues that defendants breached their fiduciary duty by usurping plaintiff's corporate opportunity and by acquiring an interest adverse to plaintiff's interest. Plaintiff notes that Savant was responsible for presenting the idea of the potential wholesale distributorship to plaintiff and that Savant, as plaintiff's chief executive officer, was thereby commissioned to obtain the opportunity for plaintiff. According to plaintiff, Savant falsely represented to O'Donnell and Chemetron that he was attempting to obtain the opportunity for plaintiff and instead succeeded in garnering the opportunity for himself, McGuinn and Tobin. Plaintiff argues that Savant, McGuinn and Tobin owed a fiduciary duty to plaintiff and breached that duty by incorporating Cryogas in order to obtain the opportunity. Plaintiff finds support for its allegations in the testimony of Lauren Sage, a vice-president of Chemetron, who testified that Chemetron had selected plaintiff to be its wholesale distributor; however, upon the urging of Savant, Chemetron named Cryogas as its distributor. On cross-examination, Sage explained that it would not have been feasible for plaintiff to engage in both the retail and wholesale markets and that there would have been a conflict had Chemetron accepted plaintiff as a wholesaler. John S. Crabbe, the regional manager of distributor sales for Chemetron, also stated that plaintiff was the corporation chosen by Chemetron to acquire the distributorship. On cross-examination, however, Crabbe clarified that the decision as to which corporation would receive the distributorship had not been determined at the time he left his employment with Chemetron. Plaintiff concludes that because defendants failed in their duty to take all steps necessary to obtain the opportunity for plaintiff, they breached their fiduciary duty to plaintiff.

Defendants argue that a corporate opportunity was not available to plaintiff and therefore the trial court was correct in finding that defendants did not breach their fiduciary duty to plaintiff. Defendants claim that the wholesale distributorship was not available to plaintiff because plaintiff was a retailer and the dealers in the Chicago market would not do business with a combined retail-wholesale distributor. Defendants assert the evidence established that Chemetron was considering plaintiff as its wholesaler by virtue of Chemetron's association with Savant and O'Donnell; however, following a feasibility study, Chemetron determined that the Chicago market mandated that a separate entity be selected as the wholesaler. Defendants cite several cases wherein the court found no breach of a fiduciary duty by corporation officers and directors accused of usurping a corporate opportu-

nity where the alleged opportunity did not exist for the corporation to obtain and utilize. See, *e.g., Paulman v. Kritzer* (1966), 74 Ill. App 2d 284, 219 N.E.2d 541, *aff'd* (1967), 38 Ill. 2d 101, 230 N.E.2d 262; *Northwestern Terra Cotta Corp. v. Wilson* (1966), 74 Ill. App. 2d 38, 219 N.E.2d 860.

A corporate opportunity exists when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage. (*Kerrigan v. Unity Savings Association* (1974), 58 Ill. 2d 20, 317 N.E.2d 39.) Moreover, an opportunity must have been in line with the corporation's business and of practical advantage to it. (*Paulman v. Kritzer* (1966), 74 Ill. App. 2d 284, 219 N.E.2d 541, *aff'd* (1967), 38 Ill. 2d 101, 230 N.E.2d 262.) To make this determination, the court looks to the facts presented as well as the nature of the business of the corporation. (*Paulman v. Kritzer* (1966), 74 Ill. App. 2d 284, 219 N.E.2d 541.) Although such determination by the trial court is always subject to review, this court will not disturb the trial court's finding unless it is against the manifest weight of the evidence. *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624.

In the instant case, although attorney Tobin was the only defendant to offer any evidence at trial, the trial court found that there was a total failure by plaintiff to present evidence to support its numerous allegations, including the allegation that Tobin profited by $20,000 at plaintiff's expense. The trial court had the opportunity to hear the testimony of six disinterested Chemetron employees along with the testimony of 15 other witnesses as well as to examine the extensive documentation presented at trial. Based on this evidence, the court found that in the Chicago area a wholesaler and a retailer could not be the same entity due to the resistance of dealers in the market to do business with a combined entity. The court also found that it would have been contrary to Chemetron's marketing plan to allow plaintiff to operate the wholesale distributorship. Finally, the court found that plaintiff could not have taken advantage of the alleged corporate opportunity in light of market conditions and therefore defendants did not breach their fiduciary duty in forming Cryogas Products, Inc., and acquiring the wholesale distributorship. It should also be noted that the record reveals that plaintiff had access to all the business records of Cryogas Products and that defendants demonstrated a strong desire to disclose any and all facts to plaintiff. Therefore, based on this record, we are not convinced that the trial court's findings were against the manifest weight of the evidence.

Plaintiff also contends the trial court erred in finding the corpora-

tion guilty of *laches* for failure to timely file this suit. Plaintiff claims that O'Donnell did not become aware of breaches of duty until after Savant's death, and the instant suit was filed one year later. Plaintiff also maintains that defendants failed to show that they were prejudiced by the delay and therefore are not entitled to assert the defense of *laches*. *DeBruyn v. Elrod* (1981), 84 Ill. 2d 128, 418 N.E.2d 413.

■ *Laches* will operate to bar equitable relief where the failure to assert a right, along with a lapse of time and other circumstances, cause prejudice to the adverse party. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341; *Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12.) In *Pyle,* the supreme court considered several factors in determining the applicability of the *laches* defense. The factors included the delay in asserting the complainant's rights while the complainant had knowledge of the right and the opportunity to institute a lawsuit, the lack of knowledge on the part of defendant that complainant would assert the right, and the prejudice to defendant in the event the suit was not barred. (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 553, 147 N.E.2d 341, 344.) Under the circumstances of this case and after reviewing the trial court's specific findings, we believe the aforementioned requirements were met, thereby establishing the defense of *laches,* which bars plaintiff's action in this case.

The trial court specifically found that plaintiff, through its agent, James O'Donnell, had full knowledge of the following facts and performed the following acts: O'Donnell knew of the existence of Cryogas and the nature of its business in 1974 and thereafter; he knew in June 1975 that Cryogas was a separate corporation from plaintiff; he insisted on numerous occasions that Cryogas be made a part of plaintiff corporation from 1974 and thereafter; he knew that Savant suffered from a series of heart attacks and had been hospitalized; and he entered into an agreement with Marcella following Savant's death to amend the terms to the lease between Cryogas and plaintiff and to purchase her stock in plaintiff corporation more than a year prior to filing the instant suit. The trial court concluded that Marcella made the agreement without knowledge of any possible claims against her individually or regarding her interest in Cryogas and thereby caused a major change in her position. It is well established that *laches* is an equitable doctrine to be invoked or rejected in the trial court's discretion. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12.) Having found no abuse of this discretion by the trial court, we reject plaintiff's argument concerning the *laches* defense.

■ We finally address plaintiff's contention that certain rulings by the trial court prevented the corporation from fully presenting its

case. Plaintiff complains in particular of the court's restriction of the testimony of expert witness, William Henderson; of the trial court's refusal to allow the evidence deposition of J. D. Thor, a former Chemetron employee; of the court's quashing of plaintiff's notice to produce documents during the trial; and of the trial court's inconsistent rulings with regard to the *laches* defense and with regard to the relevant geographic area. The decision to allow or exclude certain testimony is a matter within the sound discretion of the trial court. (*People ex rel. General Motors Corp. v. Bua* (1967), 37 Ill. 2d 180, 226 N.E.2d 6.) Upon our examination of the record, we note that plaintiff called 18 witnesses at trial on its behalf, that the trial took place after at least 21 discovery depositions had been taken, and that the parties had fully exchanged business documents which were admitted in large part by stipulation. We are convinced, based on these facts, that plaintiff was given the opportunity to fully present its case.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McGLOON and GOLDBERG, JJ., concur.