DREMCO, INC., Plaintiff-Appellant, v. SOUTH CHAPEL HILL GARDENS, INC., Defendant (Hartz Construction Company, Defendant-Appellee).

First District (2nd Division)    No. 1—94—1409

Opinion filed August 8, 1995.

Sachnoff & Weaver, Ltd., of Chicago (Joel S. Feldman and Michael D. Richman, of counsel), for appellant.

McDermott, Will & Emery, of Chicago (William P. Schuman and Christine M. Drylie, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

This suit arose when Hartz Construction Company (Hartz) purchased 13.8 acres of land for itself near a parcel that it was developing jointly with Dremco, Inc. (Dremco). Dremco appeals from the circuit court's order granting summary judgment in favor of Hartz on Dremco's claim for breach of fiduciary duty and its request for imposition of a constructive trust, questioning whether the court misapplied the corporate opportunity doctrine.

In 1986, Dremco and Hartz entered into a joint venture agreement, known as the Laramie Square IV Joint Venture (Square IV venture), for the purpose of acquiring and developing a 33-acre plot of land located at the northwest corner of 122nd Street and Laramie Avenue in Alsip, Illinois (Laramie property). The Square IV venture was specifically limited to the Laramie property and would terminate upon "the completion of construction of the buildings on the property and the sale of all the property, unless sooner terminated by agreement of the parties."

In late 1988, Dremco sought to purchase approximately 40 acres of undeveloped land, located less than one mile from the Laramie property, from South Chapel Hill Gardens, Inc. (SCI), a cemetery operator. Dremco approached Hartz to determine if it was interested in this property, and they agreed to purchase and develop it as an additional tract of land under the Square IV venture. Paragraph 7.1(g) of the purchase and sale agreement (Purchase Agreement) for the 40 acres provides that if the purchaser elects to annex the property to the Village of Oak Lawn, SCI would join the petition and seek annexation of the remainder of its cemetery property located north of and contiguous to the 40 acres. Paragraph 7.1(g) does not grant anyone an option to purchase SCI's remaining cemetery property.

Subsequently, a number of disagreements arose between the parties in connection with the Square IV venture, resulting in several lawsuits. In May 1992, Dremco and Hartz signed a letter of intent to resolve their differences and executed a settlement agreement in August 1992, dividing the jointly held properties so that the parties could go their separate ways. Pursuant to the settlement agreement, Hartz would build and complete the sale of the remaining single-family lots and the sale of all model homes at the Laramie property for a $10,000 fee for each lot and home; the balance of the proceeds of each sale would be shared equally. The parties divided the 40 acres in half, with Dremco acquiring title to the western 20 acres and Hartz gaining title to the eastern 20 acres.

On August 31, 1992, Hartz purchased a 13.8-acre parcel of land from SCI that was part of the remaining cemetery property located

immediately north of the 40 acres purchased by the Square IV venture in 1988. On September 23, Dremco filed a complaint for specific performance, declaratory judgment, and an injunction and subsequently sought imposition of a constructive trust, claiming that Hartz breached its fiduciary duty by usurping a corporate opportunity.

After completing discovery, Hartz moved for summary judgment, contending that the Square IV venture did not prohibit it from purchasing and developing the 13.8 acres and that the Square IV venture was in the process of dissolution at the time Hartz agreed to purchase the 13.8 acres. Dremco responded with a cross-motion for summary judgment, alleging that the Purchase Agreement's reference in paragraph 7.1(g) to the cemetery property north of the 40 acres made the 13.8-acre parcel a joint venture opportunity. Dremco also posited that Hartz discovered the opportunity only through the expenditure of joint venture funds. The circuit court granted Hartz's motion for summary judgment, stating that it had "read everything that you have submitted" and finding that paragraph 7.1(g) of the Purchase Agreement unambiguously refers "solely to an obligation on the part of the cemetery relative to their property." The court concluded:

> "[I]t is in my opinion an unreasonable extension of the doctrine being contended for by Dremco to suggest that because there is reference in 7.1(G) to the cemetery property, the property being retained by the seller, that that suggests that that property or any portion of it was a contemplated opportunity or an opportunity that devolved upon the joint venture. Having found that this is an unambiguous paragraph and that the contract is unambiguous, I cannot rely upon the interpretations or suggestions as to meaning by the parties here. Accordingly I find that Hartz, the defendant, has not violated any opportunity here."

Dremco timely filed this appeal.

## I

Dremco identifies error in the grant of summary judgment for Hartz because the circuit court limited its analysis of the breach of fiduciary duty/corporate opportunity claim to the four corners of the Purchase Agreement. Relying upon *Graham v. Mimms* (1982), 111 Ill. App. 3d 751, 444 N.E.2d 549, and *Labovitz v. Dolan* (1989), 189 Ill. App. 3d 403, 545 N.E.2d 304, *appeal denied* (1990), 129 Ill. 2d 564, Dremco asserts the court was required to examine extrinsic evidence in order to determine whether Hartz learned of the opportunity to purchase the 13.8 acres through the use of joint venture assets.

Hartz counters that the circuit court correctly granted summary

judgment based on the unambiguous language of the Purchase Agreement. Hartz further suggests that Dremco misapplies the corporate opportunity doctrine in the context of a single-enterprise joint venture.

■ On appeal from summary judgment rulings, the standard of review is *de novo*. (*Delaney v. McDonald's Corp.* (1994), 158 Ill. 2d 465, 467, 634 N.E.2d 749.) A joint venture is an association of two or more persons to carry on a single enterprise for profit. (*Herst v. Chark* (1991), 219 Ill. App. 3d 690, 694, 579 N.E.2d 990.) Partnership legal principles govern joint ventures and the only distinction of consequence between the two is that a joint venture relates to a single enterprise or transaction, whereas a partnership relates to a general business of a particular kind. (*Herst*, 219 Ill. App. 3d at 694.) A joint adventurer, like a partner or corporate officer or director, is a fiduciary and owes a duty of loyalty to the person or entity for whom it acts. (*Graham*, 111 Ill. App. 3d at 760-61.) The precise nature and intensity of the duty of loyalty depend, however, upon the degree of independent authority exercised by the fiduciary and the reasonable expectations of the parties at the beginning of the relationship. *Graham*, 111 Ill. App. 3d at 761.

■■ Dremco maintains that Hartz breached its fiduciary duty by usurping a "corporate opportunity." The corporate opportunity doctrine prohibits a corporation's fiduciary from misappropriating corporate property and from taking advantage of business opportunities belonging to the corporation. (*Graham*, 111 Ill. App. 3d at 762.) The core principle of the doctrine is that a fiduciary will not be permitted to usurp an opportunity which was developed through the use of corporate assets. (*Graham*, 111 Ill. App. 3d at 763.) A corporate opportunity exists when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage. (*Lindenhurst Drugs, Inc. v. Becker* (1987), 154 Ill. App. 3d 61, 67, 506 N.E.2d 645; *Peterson Welding Supply Co. v. Cryogas Products, Inc.* (1984), 126 Ill. App. 3d 759, 764, 467 N.E.2d 1068.) In determining whether an officer may take advantage of a business opportunity in which a corporation is interested, courts consider whether the corporation had an interest, actual or in expectancy, in the opportunity and whether the acquisition thereof by the officer would hinder or defeat plans and purposes of the corporation in carrying on or developing the legitimate business for which it was created. (*Lindenhurst Drugs, Inc.*, 154 Ill. App. 3d at 68.) To make this determination, the circuit court looks to the facts presented as well as the nature of the business of the corporation; its determination will not be disturbed on review unless it is

against the manifest weight of the evidence. *Peterson Welding*, 126 Ill. App. 3d at 764. See also *Lindenhurst Drugs, Inc.*, 154 Ill. App. 3d at 68.

■ Accordingly, joint adventurers, as a matter of law, stand in a fiduciary relation to each other and have the duty to act for the benefit of the other as to matters within the scope of the relation. (*Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 498, 147 N.E.2d 69.) The relationship ordinarily precludes one of them from purchasing property relating to the enterprise, either for itself or another, in the absence of a full disclosure to its associate. *Carroll*, 12 Ill. 2d at 498.

Dremco correctly notes that the circuit court should weigh a number of factors in determining whether a corporate opportunity has been usurped due to the inherent difficulty in proving the opportunity was discovered through the use of business assets; however, the court was not required to consider extrinsic evidence under these particular circumstances. The Square IV venture agreement specifically limited the scope and purpose of the enterprise to the purchase and development of the Laramie property and emphasized that "[t]he Joint Venture shall not engage in any other business or activity."

■ The agreement memorialized not only the limited nature of the business but, also, the partners' right to independently pursue other opportunities. Paragraph 18(b) of the agreement provides, in pertinent part:

"[N]othing herein contained shall be construed to constitute any Joint Venturer the agent of any other Joint Venturer *or to limit in any manner any Joint Venturer in carrying on of its own respective business or activities.*" (Emphasis added.)

Paragraph 18(c) provides:

"Any Joint Venturer may engage in and/or possess any interest in other business and real estate ventures of any nature or description, independently or with others, including, but not limited to, the ownership, management, operation, financing, leasing, syndication, brokerage, and development of real property; *and neither the Joint Venture nor any Joint Venturer, by reason of this Agreement or by reason of holding an interest in this Joint Venture, shall have any right or interest in or to any such independent venture or the income or profits derived therefrom.*" (Emphasis added.)

Therefore, Dremco and Hartz were not bound to each other except with respect to the specifically identified joint venture property. Their purchase of the 40 acres in 1988 as an additional tract of joint venture land did not change the limited scope of the business, but merely expanded it from one property to two. Pursuant to the express terms of their agreement, however, Hartz was still free to

pursue other "real estate ventures of any nature." The corporate opportunity doctrine is inapplicable here, given the singular purpose of this enterprise.

In order to circumvent the limited scope of the Square IV venture agreement, Dremco argued in the circuit court and insists on appeal that paragraph 7.1(g) of the Purchase Agreement governing the 40 acres "encompasses" the 13.8-acre tract and makes it a joint venture opportunity. Paragraph 7.1(g) provides:

> "Seller shall fully cooperate with Purchaser in connection with the annexation of the Property to such city or village as Purchaser shall at any time seek to have the Property annexed, and Seller shall provide such information and execute such documents as shall be reasonably required in order to facilitate such annexation, but shall not be required to join in such annextion [sic] for its Cemetery property other than to the [V]illage of Oak Lawn. In the event that Purchaser shall elect to annex the Property to the Village of Oak Lawn, Seller shall join in the Petition for Annexation, and shall cause or permit the Cemetery to become annexed to the Village of Oak Lawn and shall execute such documents as are required in order to facilitate such annexation, provided that such annexation shall permit Seller to operate its remaining property for cemetery and related purposes. Purchaser shall pay all costs incurred in order to consummate such annexation."

Contrary to Dremco's contention, paragraph 7.1(g) relates solely to SCI's obligation to seek annexation of its property north of the 40 acres under certain circumstances; it makes no reference to the possible future purchase of any portion of that property by the joint venture. The circuit court correctly found this contractual language unambiguous and dispositive of Dremco's claim; the mere reference to property being retained by SCI does not suggest a corporate opportunity since it falls outside of the joint venture's specific purpose. The principal cases Dremco relies upon, *Graham v. Mimms* (1982), 111 Ill. App. 3d 751, 444 N.E.2d 549, and *Labovitz v. Dolan* (1989), 189 Ill. App. 3d 403, 545 N.E.2d 304, do not stand for the proposition that a court must always examine extrinsic evidence to determine a corporate opportunity violation. A court may undertake a factual analysis in appropriate cases; however, the court here had no difficulty in determining that the 13.8 acres fell outside the narrow scope of the joint venture because the only "opportunities" contemplated by the enterprise were development of the Laramie property and, under the Purchase Agreement, the 40 acres. There was no error because the unambiguous language of paragraph 7.1(g) did not amend the limited scope of the parties' joint venture.

Both *Graham* and *Labovitz* are distinguishable from the instant

case in any event. In *Graham,* a corporate executive and shareholder used corporate assets to pursue and develop opportunities in the corporation's *line of business* and then appropriated them. (*Graham,* 111 Ill. App. 3d at 764-65.) In *Labovitz,* the issue raised was whether management discretion granted solely to a general partner in a limited partnership agreement authorized the general partner to use economic coercion to cause his limited partners to sell their interests to him at a bargain price. (*Labovitz,* 189 Ill. App. 3d at 404.) The *Labovitz* court held that a partner's fiduciary duty exists concurrently with the obligations set forth in the partnership agreement and, therefore, the agreement alone could not be dispositive of a breach of fiduciary duty claim. *Labovitz,* 189 Ill. App. 3d at 412, 417.

Here, the Square IV venture agreement limited the business to development and sale of specific property only. The Purchase Agreement's "reference" to another parcel of land did not constitute an agreement by the parties to expand their joint venture. Accordingly, the 13.8 acres were not within the joint venture's line of business and Hartz did not owe Dremco any fiduciary duty in connection with them.

Assuming, *arguendo,* that the circuit court was "required" to examine extrinsic evidence, Dremco's breach of fiduciary duty/ corporate opportunity claim fails nonetheless. Dremco alleges that the parties' evidentiary submissions create a factual issue as to whether Hartz used joint venture funds to discover availability of the 13.8 acres. Dremco points to the following circumstantial evidence to support its argument: (1) the 13.8 acres directly border a tract of land that the joint venture purchased for $2 million; (2) the only access to the 13.8 acres was through the joint venture's 40 acres; (3) paragraph 7.1(g) of the Purchase Agreement encompasses the 13.8 acres; (4) Hartz admitted Dremco discussed the 13.8 acres with it prior to the purchase; (5) Hartz purchased the 13.8 acres from the same party that sold the joint venture's 40 acres to the joint venture; (6) joint venture funds were used to pay the mortgage on the 40 acres; (7) Hartz signed the contract to purchase the 13.8 acres one week after signing an agreement dividing the 40 acres; and (8) Hartz refused to submit any contrary evidence.

Hartz counters that Ed McGowan, a Dremco principal, admitted in his deposition that paragraph 7.1(g) did not confer an option to purchase the 13.8 acres to anyone but related solely to annexation issues, and further posits that the remainder of Dremco's "evidence" is immaterial. Hartz also notes a section of McGowan's deposition that is dispositive of Dremco's claim. In discussing Dremco's negotiations for purchase of the 40 acres, McGowan testified:

"[W]e had a contract drafted already foreclosing, and in a conversation with Mr. Hartz about what we were doing or what we were going to be doing, we mentioned we were purchasing that 40 acres. *He indicated the fact that he had been trying to get that property for ten years and was unsuccessful.* He was surprised we were able to get it and indicated—asked that we would do it jointly seeing that the other development was nearby." (Emphasis added.)

McGowan's own testimony demonstrates that Hartz was aware of the 40 acres and, implicitly, the neighboring property a full 10 years prior to its purchase and approximately 8 years prior to formation of the joint venture. As a result, the assertion that Hartz "discovered" this opportunity through joint venture assets fails.

## II

Hartz proposes that the circuit court's decision should be affirmed on the additional, independent ground that the joint venture was in dissolution at the time Hartz agreed to purchase the 13.8 acres.

Dremco responds that, as a matter of law, it is irrelevant whether the joint venture could take advantage of the opportunity. Alternatively, Dremco maintains that there is a factual issue about whether the joint venture could take advantage of the opportunity and points out that the business continues to operate.

■ When a corporation's fiduciary wants to take advantage of a business opportunity which is in the corporation's line of business, the fiduciary must first disclose and tender the opportunity to the corporation, notwithstanding the fact that the fiduciary may have believed that the corporation was legally or financially incapable of taking advantage of the opportunity. (*Graham*, 111 Ill. App. 3d at 765.) Dissolution of the partnership, however, ends the fiduciary relationship except for purposes of an accounting or the winding up of the partnership's affairs. (*Hamilton v. Williams* (1991), 214 Ill. App. 3d 230, 247, 573 N.E.2d 1276, *appeal denied* (1991), 141 Ill. 2d 540.) Whether the arrangement is called a joint venture or partnership is immaterial and it may be terminated by mutual consent at any time; the fact that it continues for purposes of winding up unfinished business does not nullify the dissolution, and either party is free to enter into projects on its own initiative and with its own funds, without subjecting it to any claim for accounting by the other. *Meyer v. Sharp* (1950), 341 Ill. App. 431, 440, 94 N.E.2d 510.

■ Dremco's reliance upon the proposition that the corporate opportunity doctrine applies even if the corporation is incapable of tak-

ing advantage of it is misplaced. That proposition relates only to situations where a corporation is ongoing and viable, but potentially unable to take advantage of the opportunity for financial or legal reasons. Here, the joint venture was in dissolution at the time Hartz purchased the 13.8 acres and its continued operations under the settlement agreement are merely part of the winding up of the Laramie property development. The fact that the joint venture was in dissolution at the time Hartz purchased the 13.8 acres negates any obligation to tender the opportunity to Dremco and provides an additional basis for the circuit court's decision.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

SCARIANO, P.J., and DiVITO, J., concur.