2019 IL App (1st) 181126

FIRST DISTRICT
SIXTH DIVISION
May 10, 2019

No. 1-18-1126

| | |
|---|---|
| ADVANTAGE MARKETING GROUP, INC., | ) Appeal from the Circuit |
| | ) Court of Cook County. |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 17 CH 05559 |
| | ) |
| JAMES P. KEANE, SR., | ) Honorable |
| | ) Neil H. Cohen, |
| Defendant-Appellee. | ) Judge Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Cunningham and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Advantage Marketing Group, Inc. (AMG) filed a two-count amended complaint seeking relief against defendant James P. Keane, Sr., for breach of fiduciary duty and tortious interference with prospective economic advantage. Plaintiff alleged that Keane failed to disclose a corporate opportunity to purchase a competing business and exploited a client referral to his advantage. Keane moved to dismiss the amended complaint pursuant to section 2-615 (735 ILCS 5/2-615 (West 2016)) of the Illinois Code of Civil Procedure (Code). Keane argued that the corporate opportunity doctrine did not apply to him because, at the time of the alleged conduct, he served as a mere employee of AMG and not as an officer or director of the company. Keane also contended that even if the corporate opportunity doctrine applied, he disclosed the corporate opportunity to AMG consistent with the obligations of the doctrine. Finally, Keane argued that AMG failed to properly plead the allegations for tortious interference with a prospective

economic advantage. The circuit court granted Keane's motion to dismiss. We find that AMG properly stated claims for breach of fiduciary duty and tortious interference with a prospective economic advantage. We reverse and remand this cause for further proceedings.

¶ 2                                    BACKGROUND

¶ 3      AMG filed its amended complaint on January 23, 2018. The amended complaint alleged that AMG, an Illinois corporation, is a marketing services company that provides letter-shop and fulfillment services for its clients. AMG creates and administers print and mailing programs for its clients from its facility in Elk Grove Village. Keane had formerly served as a director, officer, and employee of AMG. He was an original founder of AMG and maintains a 35% shareholding stake in the company.

¶ 4      The amended complaint alleges that for several years prior to his resignation, Keane served as a "principal employee of AMG with wide-ranging responsibilities equivalent to those of an officer." For example, Keane consistently held himself out to third parties as an AMG owner when developing customer relationships. Keane had substantial responsibility for AMG employment decisions, including hiring and termination of staff. He had access to all AMG books and records, including client lists, employee records, tax documents, vendor information, and billing data. Keane received a bonus equal to that of Patty Hermann, AMG's director and majority shareholder. He was responsible for developing and maintaining AMG's financial records and had full access to the company's accounting system. Throughout his tenure with AMG, Keane's job duties included exploring strategic acquisitions, including the purchase of competing letter-shop businesses, their equipment, and customer lists. The amended complaint detailed instances when Keane participated in the negotiation and acquisition of related

2

businesses, stating that he was "a key point of contact throughout 2013 regarding AMG's opportunity to move or acquire property to conduct business operations."

¶ 5      On July 10, 2013, Keane's son, James Jr., also an AMG employee, sent an email to Keane and Hermann with the subject line, "*Mailhouse – Rebranded Website – Is that the same ownership group as before?*" The body of the e-mail included a website link for The Mail House, a competing business located a few blocks away from AMG's office. The amended complaint alleged that during the summer and fall of 2013, Keane and Hermann discussed The Mail House and whether it was a viable acquisition target. The amended complaint stated, "Though Hermann is unaware of when Keane ultimately began his own discussions about buying The Mail House, the business was one that AMG had explored acquiring."

¶ 6      The amended complaint alleged that at some point before Keane's departure from AMG on September 4, 2015, he started to withhold information for himself and communicated outside AMG channels using his personal e-mail account while failing to forward information that would have benefitted AMG. On March 10, 2014, Keane transferred his assigned corporate cell phone number to his own personal account, outside the view of AMG. The amended complaint alleged that this action allowed him to retain and use the same phone number following his resignation from AMG and further prevented AMG from controlling communications that he had during his employment with AMG.

¶ 7      The amended complaint also alleged that Keane began preparations to acquire The Mail House before his September 4, 2015 resignation. For instance, on August 3, 2015, he registered a new internet domain name, "mailhousedm.com," along with seven other domain names that each contained the word, "mailhouse." On August 12, 2015, he formed Keane, Inc. d/b/a The Mail House. The alleged complaint stated that "Upon information and belief, Keane formed this

corporation to acquire The Mail House," and that "[a]t all times, The Mail House has conducted letter-shop and fulfillment services similar to, and competitive with, those offered by AMG."

¶ 8   During the week before his resignation, Keane failed to disclose and tender to AMG a referral he received from another company, JD Graphics. James, Jr., forwarded the referral from JD Graphics to Keane's personal e-mail account. The amended complaint alleged that Keane exploited this referral after he began operating The Mail House. In addition, Keane approached and told clients and vendors of AMG that AMG was in danger of closing its business due to financial issues.

¶ 9   On September 5, 2015, the day after Keane resigned, AMG discovered its security cameras were turned off and that its security tapes were missing. On September 9, 2015, Keane allegedly disabled AMG's website. He refused to transfer AMG's website materials back to the company for more than one week. Out of business necessity, AMG established an entirely new website. The day before Keane transferred the website content back to AMG, James, Jr. registered a new website domain, "amgltd.co," which differed by only one letter from AMG's domain name. The amended complaint alleged that Keane either was aware of or actively encouraged James, Jr. to disable AMG's website and then register a substantially similar domain name. During Keane's employment with AMG, James, Jr. reported directly to Keane. James, Jr. tendered his resignation to AMG on September 7, 2015.

¶ 10   The amended complaint alleged that Keane solicited James, Jr. to leave AMG and join him at The Mail House. Keane did not seek AMG's consent before soliciting James, Jr. to leave AMG and join a direct competitor. Further, Keane never sought AMG's consent to appropriate the JD Graphics referral or to interfere with AMG's website operation. Additionally, before his resignation, James, Jr. had obtained samples of confidential client material that belonged to

4

AMG. Keane kept the samples for himself, resigned, and then returned the client materials after AMG's then-counsel demanded their return. Since his acquisition of The Mail House, Keane has continued to perform lettershop and print work for this particular client.

¶ 11    The amended complaint alleged that "At all times before Keane's resignation, The Mail House was known to AMG as a competitor. The Mail House provided comparable products and services to the same type of clientele that AMC had serviced and cultivated. Accordingly, The Mail House was, and remains, in the same line of business as AMG." Further, "[a]t no point in 2015 did Keane disclose to Hermann or AMG that he sought to acquire The Mail House. Nor did Keane ever advise Hermann or AMG that the prior owners of The Mail House were interested in selling their business to a third party." Finally, the amended complaint alleged that "[h]ad Keane brought The Mail House acquisition opportunity to AMG, AMG would have been interested in pursuing it."

¶ 12    Count I of the amended complaint alleged breach of fiduciary duty, stating that "[a]s a key AMG employee with responsibility equivalent to those of an officer, Keane owed a fiduciary duty of loyalty, fidelity, rectitude, candor, and good faith." This fiduciary duty prohibited Keane "from actively exploiting his position within AMG for his own personal benefit and from hindering the ability of AMG to continue the business for which it was developed." The amended complaint alleged that Keane owed AMG a fiduciary duty to disclose and tender all corporate opportunities, including all material facts to AMG. Keane allegedly breached this duty by secretly negotiating and purchasing a directly competing business, The Mail House, while still employed by AMG as "a key AMG employee." Keane failed to disclose and tender a corporate opportunity – the potential acquisition of The Mail House – to AMG for its full and complete consideration. In addition, Keane allegedly breached his fiduciary duty to AMG by: (1)

soliciting James, Jr. to leave AMG and join The Mail House; (2) misappropriating referrals for existing lettershop work sent to AMG; (3) misappropriating client samples; and (4) disabling or otherwise interfering with AMG's website. AMG sought the imposition of a constructive trust on The Mail House business to be held for the benefit of AMG, and other relief.

¶ 13    Count II of the amended complaint alleged that Keane tortiously interfered with AMG's prospective economic advantage "[b]y acquiring The Mail House for himself and by appropriating the client referral," which caused "a termination of AMG's expectation of entering into, or continuing, valid business relations."

¶ 14    On February 20, 2018, Keane moved to dismiss the amended complaint pursuant to section 2-615 of the Code. Keane argued that the corporate opportunity doctrine has no application to him as a former employee and applies only to officers and directors. Keane contended that even if the corporate opportunity applies in this case, he disclosed the corporate opportunity to AMG consistent with the obligations of the corporate opportunity doctrine. Keane and Hermann had discussed whether The Mail House was a viable acquisition, as pled in the amended complaint. Finally, Keane argued that the amended complaint failed to plead allegations addressing the elements necessary to establish a claim for tortious interference of a prospective economic advantage.

¶ 15    On May 1, 2018, the circuit court granted Keane's motion to dismiss. The court found that AMG failed to allege any facts establishing that Keane was an officer of AMG at the time of any of the events set forth in the amended complaint. The court stated that being a "key employee" is not the equivalent of being a corporate officer. The court also held that Keane was entitled to form a competing business and purchase The Mail House while still employed by AMG so long as he did not begin to compete against AMG. The court stated that the amended

complaint failed to allege specific facts showing that Keane actively competed with AMG while still employed by AMG. Finally, the court found that AMG failed to allege any facts showing that it had a valid business relationship with JD Graphics or a valid expectancy for such a relationship and, therefore, did not state a claim for tortious interference with a prospective economic advantage. This appeal followed.

¶ 16                                            ANALYSIS

¶ 17    On appeal, AMG argues that it stated a proper claim against Keane for breach of fiduciary duty. Essentially, AMG contends that Keane owed a fiduciary duty to disclose and tender The Mail House acquisition opportunity to AMG before he resigned. AMG argues that the corporate opportunity doctrine's parameters depend on the scope of the fiduciary's agency relationship rather than the employee's title. AMG contends that Keane's "preparing to compete" defense does not apply in cases alleging a usurpation of corporate opportunity. Finally, AMG argues that the factual allegations arising from Keane's appropriation of The Mail House opportunity place it within a cognizable tortious interference claim. We address these issues in turn.

¶ 18                                     Standard of Review

¶ 19    "A section 2-615 motion to dismiss tests the legal sufficiency of a complaint." *Hadley v. Doe*, 2015 IL 118000, ¶ 29. The question presented by a section 2-615 motion to dismiss is whether sufficient facts have been pled in the complaint which, if proved, would entitle the plaintiff to relief. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 23. We construe all well-pleaded facts in the light most favorable to the plaintiff and take those facts and all reasonable inferences which flow from those facts as true. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 320 (2008). A complaint can be dismissed under section 2-615 only when it clearly

appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief and where the circuit court can determine the relative rights of the parties solely from the pleadings. *Tuite v. Corbitt*, 224 Ill. 2d 490, 510 (2006). We review dismissal pursuant to section 2–615 *de novo*. *Napleton*, 229 Ill. 2d at 305.

¶ 20                              Claim for Breach of Fiduciary Duty

¶ 21    In count I of the amended complaint, AMG claimed that Keane breached his fiduciary duty when he misappropriated a corporate opportunity to acquire The Mail House. Keane argues that he was not an officer or director subject to the corporate opportunity doctrine. Keane contends that he was permitted under Illinois law to take the preparatory steps of outfitting a competing business. He also argues that he disclosed the potential acquisition of The Mail House and that AMG failed to allege in its amended complaint that it took any further action with regard to The Mail House.

¶ 22    A claim for breach of fiduciary duty must allege: "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 69. A duty of loyalty to the employer extends to officers, directors, *and employees*. *Id*. (citing *Mullaney, Wells & Co. v. Savage*, 78 Ill. 2d 534, 546-47 (1980)). "Accordingly, a fiduciary cannot act inconsistently with his agency or trust and cannot solicit his employer's customers for himself." *Id*.

¶ 23    The corporate opportunity doctrine prohibits a corporation's fiduciary from misappropriating corporate property and from taking advantage of business opportunities belonging to the corporation. *Lindenhurst Drugs, Inc. v. Becker*, 154 Ill. App. 3d 61, 67 (1987). "A corporate opportunity exists when a proposed activity is reasonably incident to the

corporation's present or prospective business and is one in which the corporation has the capacity to engage." *Id*. Our supreme court has held that it is a breach of fiduciary obligation for a person to seize for his own advantage a business opportunity which rightfully belongs to the corporation by which he is employed. *Mullaney*, 78 Ill. 2d at 545-46 (citing numerous Illinois Supreme Court cases holding similarly).

¶ 24    In contrast, "corporate competition" occurs when the corporate employer by definition already has an existing business relationship with a third party or is actively seeking to establish such a relationship, only to have its efforts thwarted by its own employees seeking the same third party relationship for themselves. See William L. Schaller, *Corporate Opportunities and Corporate Competition in Illinois: A Comparative Discussion of Fiduciary Duties*, 46 J. Marshall L. Rev. 1, 26 (2012). For example, in *Everen Securities, Inc. v. A.G. Edwards & Sons, Inc.*, 308 Ill. App. 3d 268 (1999), the defendant Sidney Carlson, while still employed by the plaintiff Everen Securities (1) created a customer data base from which the defendant A.G. Edwards could generate letters notifying Carlson's customers of his change in employment to A.G. Edwards; (2) made photocopies of documents containing customer account information; and (3) extended offers of employment on behalf of A.G. Edwards to Everen employees. These actions supported a finding that Carlson breached his fiduciary duty to Everen. *Id.* at 276; see also *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.*, 90 Ill. App. 3d 817, 826-28 (1980) (employees breached fiduciary duty by actively promoting interests of rival business and diverting personnel and customers to employer's competitors).

¶ 25    In corporate competition cases, an employee or agent may legitimately take certain preparatory steps during the agency relationship so long as they do not directly conflict with the employer or principal. "As a general rule, employees may plan, form, and outfit a competing

corporation while still working for the employer, but they may not commence competition." *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 736 (2009)). "In addition, absent fraud, a contractual restrictive covenant, or the improper taking of a customer list, former employees may compete with their former employers and solicit former customers provided there was no demonstrable business activity before termination of their employment." *Id.* Although employees "may go so far as to form a rival corporation and outfit it for business while still employed by the prospective competitor, an employee is held accountable for breaching his fiduciary duty to his employer when he goes beyond such preliminary competitive activities and commences business as a rival concern while still employed." *E.J. McKernan Co. v. Gregory*, 252 Ill. App. 3d 514, 530 (1993).

¶ 26    Here, taking AMG's allegations as true, the amended complaint alleged that Keane "was a principal employee of AMG with wide-ranging responsibilities to those of an officer," and that he misappropriated for himself a corporate opportunity, the acquisition of The Mail House, a company that competed directly with AMG. In short, this case involves an alleged usurpation of a corporate opportunity to obtain a competing business so that the defendant could enter into direct competition with his former employer. This case does not only involve corporate competition, as Keane would prefer to characterize it. Here, the allegations of corporate opportunity and corporate competition are intertwined and, thus, we examine both accordingly in the context of the breach of fiduciary duty claim.

¶ 27    We first consider whether the amended complaint properly pled that a fiduciary duty between Keane and AMG existed at the time in question. Generally, "[e]very person who accepts the responsibility of acting on behalf of another is a fiduciary." *Graham v. Mimms*, 111 Ill. App. 3d 751, 760 (1982). "An agency is 'a consensual fiduciary relationship between two legal

entities' whereby 'the principal has the right to control the conduct of the agent, and the agent has the power to effect [*sic*] the legal relations of the principal.' " *State Security Insurance Co. v. Frank B. Hall & Co.*, 258 Ill. App. 3d 588, 595 (1994) (quoting *Gunther v. Commonwealth Edison Co.*, 126 Ill. App. 3d 595, 598 (1984)); see also Restatement (Third) of Agency § 1.01 (2006) (defining agency as "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and be subject to the principal's control, and the agent manifests assent or otherwise consents so to act"). "An employee need not be an officer or a director to be accountable since an agent must act solely for the principal in all matters related to the agency and refrain from competing with the principal." *E.J. McKernan*, 252 Ill. App. 3d at 530. Indeed, "[w]hen a principal-agent relationship is present, a fiduciary relationship arises as a matter of law." *Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 859 (1998) (citing *State Security Insurance*, 258 Ill. App. 3d at 595). The fiduciary owes a duty of loyalty to the entity for whom the fiduciary is acting. *Graham*, 111 Ill. App. 3d at 761 (citing *Dick v. Albers*, 243 Ill. 231, 236 (1909)). "Among other factors, the precise nature and intensity of the duty of loyalty depends upon the degree of independent authority exercised by the fiduciary [citation] and the reasonable expectations of the parties at the beginning of the relationship." *Id.*

¶ 28    In this case, AMG pled that Keane served as a key employee upon his resignation. Keane allegedly "held himself out to third parties as an AMG owner when developing customer relationships." He "had substantial responsibility for AMG employment decisions, including hiring and termination of staff." AMG alleged that Keane had access to all AMG books and records, including client lists, employee records, tax documents, and vendor information. He received a compensation bonus equivalent to the director and majority shareholder of the

11

company. He was responsible for developing and maintaining AMG's financial records. In addition, Keane was expected to research and develop strategic acquisitions, including the purchase of competing lettershop businesses, their equipment, and customer lists. Finally, AMG alleged that at the time of his resignation, Keane owned a 35% shareholder stake in the company.

¶ 29    Even if Keane is not considered to be an officer or director of AMG, his considerable duties and responsibilities as an employee, his compensation, and his status as a minority shareholder put him in the position to act solely for the benefit of the principal in all matters connected with his agency. In *Anest v. Audino*, 332 Ill. App. 3d 468, 476-77 (2002), the court found that the counterdefendant Bill Anest was more than a minority shareholder in a close corporation – he had management responsibilities in the company. "His role in the entity was, like that of his fellow members, akin to that of an officer or director in a corporation." *Id*. at 477. The *Anest* court held that it was against the manifest weight of the evidence for the circuit court to conclude that Anest did not owe any fiduciary duty to the counterplaintiff David Audino. *Id*. Simply put, when "employees continue to receive substantial salaries and continue to take part in top-level management meetings, negotiations and strategy discussions, their employer is entitled to their undivided loyalty and their utmost good faith." *Regal-Beloit Corp. v. Drecoll*, 955 F. Supp. 849, 864 (N.D. Ill. 1996) (applying Illinois and Wisconsin law). Following *Anest* and *Regal-Beloit*, we conclude that the amended complaint properly pled the existence of a fiduciary duty between AMG and Keane. *Anest*, 332 Ill. App. 3d at 477; *Regal-Beloit*, 955 F. Supp. at 864.

¶ 30    However, Keane argues that the corporate opportunity doctrine as pled in the amended complaint applies to officers and directors, but not employees and, therefore, AMG did not properly plead a breach of fiduciary duty. Our supreme court's holding in *Mullaney* belies that contention.

¶ 31    In *Mullaney*, the supreme court specifically held that even though the defendant, Barnard Savage, was just an employee, and not an officer or director, he still had a duty under standard agency doctrine "to act solely for the benefit of the plaintiff [employer] in all matters connected with his agency and to refrain from competing with the plaintiff." 78 Ill. 2d at 546. The plaintiff employer, Mullaney, Wells and Company (Mullaney), was engaged in underwriting corporate securities that included the occasional creation of investments on its own account ("two-party transactions") and acting, for a fee, as a broker between businesses in need of funds and potential investors ("three-party transactions"). *Id.* at 547. While employed by Mullaney, Savage learned of the undervalued stock of Blossman Hydratane Gas and contacted Blossman about procuring financing for the company – an example of a three-party transaction. When the proposed financing failed to materialize, Savage and S.C. Williams, a person with whom Savage had invested in other deals, offered to buy Blossman's stock in the gas company – a two-party transaction. After Savage and Williams bought the Blossman shares, Mullaney sued them for an accounting and to impose a constructive trust on the proceeds stemming from the Blossman transaction. The appellate court found that Mullaney had told Savage that he could engage in transactions on his own account to supplement his income and concluded that Mullaney rarely purchased stock for its own benefit. Thus, Mullaney did not expect to be provided by its employees with stock purchase opportunities.

¶ 32    The supreme court disagreed, holding that Savage, while still remaining an employee of Mullaney, could not " 'begin to act on his own' " because the ultimate transaction differed from those in which the plaintiff normally engaged. *Id.* at 549.

> "To accord Savage the option of substituting himself as the investing party
> without the consent of the plaintiff is to place himself in a position where his

13

personal interests will conflict with his duties to the principal. The situation is in principle indistinguishable from that of a real estate broker engaged to sell property owned by his principal who, without full disclosure of all material facts, acquires an interest in the property himself." *Id.*

¶ 33   More recently, the supreme court reaffirmed the holding that employees, as well as officers and directors, owe a duty of loyalty to their employer. See *Lawlor*, 2012 IL 112530, ¶ 69 (citing *Mullaney*, 78 Ill. 2d at 546-47 and *E.J. McKernan Co.*, 252 Ill. App. 3d at 530). Accordingly, we reject Keane's argument that the corporate opportunity doctrine does not apply to employees of a company. The amended complaint adequately pled that Keane, both as a mere "employee" and, more importantly, in his duties similar to that of an officer or director, owed a fiduciary duty to AMG. *Mullaney*, 78 Ill. 2d at 546-47; *Anest*, 332 Ill. App. 3d at 477.

¶ 34   Next, we determine whether AMG properly pled a breach of fiduciary duty under the corporate opportunity doctrine. First, we consider whether AMG sufficiently pled the existence of a corporate opportunity, because if no opportunity existed, the fiduciary cannot commit a breach of duty in availing himself of the opportunity. Then the question becomes whether AMG sufficiently pled Keane's misappropriation of the alleged opportunity.

¶ 35   "A corporate opportunity exists when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage." *Dremco, Inc. v. South Chapel Hill Gardens, Inc.*, 274 Ill. App. 3d 534, 538 (1995). In determining whether the fiduciary may take advantage of a business opportunity in which a corporation is interested, "courts consider whether the corporation had an interest, actual or in expectancy, in the opportunity and whether the acquisition thereof by the [fiduciary] would

hinder or defeat plans and purposes of the corporation in carrying on or developing the legitimate business for which it was created." *Id*. Significantly,

"[w]hen a corporation's fiduciary wants to take advantage of a business opportunity which is in the corporation's line of business, the fiduciary must first disclose and tender the opportunity to the corporation, notwithstanding the fact that the fiduciary may have believed that the corporation was legally or financially incapable of taking advantage of the opportunity." *Id*. at 542.

Our supreme court has stated:

"[I]f the doctrine of business opportunity is to possess any vitality, the corporation or association must be given the opportunity to decide, *upon full disclosure of the pertinent facts*, whether it wishes to enter into a business that is reasonably incident to its present or prospective operations. If directors fail to make such a disclosure and to tender the opportunity, the prophylactic purpose of the rule imposing a fiduciary obligation requires that the directors be foreclosed from exploiting that opportunity on their own behalf." (Emphasis added.) *Kerrigan v. Unity Savings Ass'n*, 58 Ill. 2d 20, 28 (1974).

¶ 36    The amended complaint alleged that Keane and Hermann discussed The Mail House in the summer and fall of 2013 "and whether it was a viable acquisition target." The amended complaint alleged that The Mail House "was known to AMG as a competitor," and that it "provided comparable products and services to the same type of clientele that AMG had serviced and cultivated." AMG alleged, "[t]hough Hermann is unaware of when Keane ultimately began his own discussions about buying The Mail House, the business was one that AMG had explored acquiring." The amended complaint alleged that "[a]t no point in 2015 did Keane disclose to

Hermann or AMG that he sought to acquire The Mail House. Nor did Keane ever advise Hermann or AMG that the prior owners of The Mail House were interested in selling their business to a third party." Finally, the amended complaint pled that "[h]ad Keane brought The Mail House acquisition opportunity to AMG, AMG would have been interested in pursuing it."

¶ 37    Taking the pleadings as true, as we must, AMG has sufficiently pled the existence of a corporate opportunity, namely, the acquisition of The Mail House, a competing business. AMG properly pled that The Mail House was in the same "line of business" as AMG because it provided comparable products and services to the same clientele as AMG. *Id.*

¶ 38    Under *Kerrigan*, when a corporate opportunity within the same line of business arises, the corporate fiduciary must fully disclose and timely tender the opportunity to the corporation. *Id.* Keane argues that AMG "has pleaded itself out of court by expressly alleging that Keane disclosed and discussed The Mail House acquisition opportunity" with AMG. According to Keane, those allegations establish that he satisfied any possible duty owed to AMG. Further, Keane contends that because he informed AMG of the alleged opportunity and AMG declined to pursue it, he was free to pursue the opportunity himself. See *id.* at 27-28 ("It may be conceded that if a corporation has been informed by a director of a business opportunity, which it declines, the director may then be free to pursue the opportunity himself.").

¶ 39    In this case, however, AMG did not allege in its amended complaint that it declined to pursue the acquisition of The Mail House. Instead, AMG specifically claimed that it would have pursued the acquisition of The Mail House if Keane had disclosed the opportunity. The amended complaint alleged that Keane and Hermann discussed whether The Mail House was a viable acquisition target in 2013. AMG alleged that Keane never disclosed that he sought to acquire The Mail House. He also purportedly failed to disclose that the prior owners of The Mail House

16

were interested in selling their business to a third party. In short, the pleadings reveal that Keane allegedly failed to fully disclose the pertinent facts involving the corporate opportunity to acquire The Mail House, a business that was reasonably incident to AMG's present operations. *Id*. at 28.

¶ 40   Moreover, Illinois law requires more than disclosure and tender of the corporate opportunity. The *Mullaney* court specifically held that a fiduciary cannot begin to act on his own "*without the consent*" of the principal because otherwise, the fiduciary places himself "in a position where his personal interests will conflict with his duties to his principal." (Emphasis added.) 78 Ill. 2d at 549. Similarly, the court in *Regal-Beloit* issued an injunction against the defendants, employee-fiduciaries who secretly sought to purchase the same business as their employer. 955 F. Supp. at 864. The *Regal-Beloit* court held that:

> "the Individual Defendants' failure to disclose any and all facts relevant and material to Regal-Beloit's pursuit of Brad Foote – including Ward's and Iglar's refusal to deal with Regal-Beloit, Brad Foote's business concerns with Regal Beloit's original purchase offer, and the Individual Defendants' desire and efforts to acquire Brad Foote on their own account – prior to exploiting that 'corporate opportunity' likely constitutes a breach of their own fiduciary duties of loyalty and good faith to Regal Beloit." *Id*.

¶ 41   Further, a fiduciary's disclosure of his intent to pursue an opportunity for himself does not by itself free the fiduciary to pursue the opportunity. See *Patient Care Services, S.C. v. Segal*, 32 Ill. App. 3d 1021, 1031 (1975) (rejecting the defendant's argument that once he gave notice of his intent to pursue the corporate opportunity, "he is ipso facto free to contest with the corporation the business opportunity"). Indeed, in circumstances where the fiduciary attempts to seize the business opportunity away from the corporation, which manifested its desire to retain it,

"the mere fact that such [fiduciary] has announced his intention in advance to throw down the gauntlet and do battle with his corporation over the opportunity will not constitute good faith." *Id*. at 1032. In *Lindenhurst*, 154 Ill. App. 3d at 71, the court found the defendant breached his fiduciary duties to the plaintiff corporation by competing with the plaintiff and taking an opportunity belonging to the plaintiff for himself. The court concluded that the defendant "cannot use the fact that he originally disclosed the opportunity to plaintiff, who then made a low initial offer, to excuse his breach of fiduciary duties in taking the opportunity for himself." *Id*. at 70.

¶ 42    Based on these findings, we reject Keane's argument that his disclosure of the potential acquisition of The Mail House excused him from his fiduciary duty. The amended complaint alleges that Keane failed to disclose he was interested in pursuing the acquisition of The Mail House himself. Under *Mullaney* and *Kerrigan*, Keane was required to disclose all the pertinent facts surrounding the acquisition of The Mail House, including his own personal interest, *and* obtain AMG's consent before pursuing the opportunity himself. 78 Ill. 2d at 549; 58 Ill. 2d at 28. Taking the allegations as true, we find AMG sufficiently pled a breach of fiduciary duty.

¶ 43    We also reject Keane's argument that he was permitted to take the preparatory steps of outfitting a competing business. AMG pled that it remained interested in acquiring The Mail House and Keane, in direct conflict with that interest, allegedly negotiated for and purchased The Mail House while still employed by AMG. The pleadings also allege he went beyond mere preparation. For example, he allegedly solicited James, Jr. to resign from AMG and join him at The Mail House, misappropriated referrals for existing lettershop work sent to AMG, misappropriated client samples, and disabled AMG's website. Taken as a whole, AMG sufficiently pled that Keane's conduct violated the rule that an agent (or employee) may not

compete with his principal (or employer) concerning matters within the scope of this agency (or employment) for purposes of usurping a corporate opportunity. *Mullaney*, 78 Ill. 2d at 549.

¶ 44   Finally, we find AMG adequately pled that Keane's alleged breach proximately caused injury to AMG. The amended complaint alleged that Keane usurped the corporate opportunity of acquiring The Mail House and, since that acquisition, he has solicited and served customers of AMG with his competing company. AMG seeks the imposition of a constructive trust on The Mail House business to be held for the benefit of AMG.

¶ 45   The circuit court erred in granting Keane's section 2-615 motion to dismiss as to count I of the amended complaint. We find that AMG properly alleged a claim for breach of fiduciary duty against Keane.

¶ 46              Tortious Interference With Prospective Economic Advantage

¶ 47   Next, AMG argues that count II of its amended complaint properly alleged that Keane's misappropriation of The Mail House opportunity constituted tortious interference with prospective economic advantage. To state a claim for tortious interference with prospective economic advantage, a plaintiff must show "(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional and malicious interference inducing or causing a breach of termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted." *Small v. Sussman*, 306 Ill. App. 3d 639, 648 (1999). "A plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed toward that third party." *Associated Underwriters of America Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 1020 (2005). "A claim of intentional interference 'must set forth facts which suggest that defendant acted with the purpose of injuring plaintiff's

expectancies.' " *Kapotas v. Better Government Ass'n*, 2015 IL App (1st) 140534, ¶ 80 (quoting *J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.*, 213 Ill. App. 3d 510, 515 (1991)).

¶ 48    In this case, taking the pleadings as true, AMG alleged the existence of a valid business expectancy in that Hermann and Keane had discussed whether The Mail House was a viable acquisition target and that AMG had remained interested in acquiring The Mail House. AMG alleged that Keane had knowledge of the expectancy, as he discussed the potential acquisition with Hermann as early as 2013. As discussed more fully above, the amended complaint alleged facts showing that Keane acted with the purpose of injuring AMG's expectancies in that he usurped a corporate opportunity for his own benefit and to the detriment of AMG. In discussing the scope and nature of Keane's fiduciary duties, numerous factual questions exist regarding his conduct prior to his resignation from AMG. His acquisition of The Mail House terminated AMG's alleged expectancy to acquire the same business. Finally, AMG alleged that it incurred damages from Keane's actions in the form of customers who defected to The Mail House after Keane acquired it.

¶ 49    Accordingly, we find AMG sufficiently pled a claim for tortious interference with prospective economic advantage. We find the circuit court erred in dismissing count II of the amended complaint.

¶ 50                                    CONCLUSION

¶ 51    We reverse the judgment of the circuit court and remand the cause for further proceedings.

¶ 52    Reversed and remanded.